LEVI W. CASE et al., executors, &c.,

v.

OSWALD HASSE et al.

[Submitted January 22d, 1914.   Decided February 2d, 1914.]

1. By an item in her will a testatrix gave to five named persons "to each and all above or to their heirs two thousand dollars."—*Held*, that the contention that thereby the testatrix appropriated the sum of $2,000 to be divided among the five persons therein named, giving them $400 each, is not admissible, but that she intended to give to each one of the said five persons the sum of $2,000, or $10,000 in all.

2. By another item in her will the testatrix gave to her half-sister all her "furniture and personal belongings."—*Held*, that the words "furniture and personal belongings" carry the contents of her apartments in an apartment-house wherein the testatrix lived, as they were at the time of her death.

3. Another paragraph of the will of the testatrix relating to a bequest to the poor children of Dresden, upon which two questions arise, the first as to what property is included in the bequest, and the second, whether the bequest is valid as a charitable use, provides as follows: "IIII. My Old Master paintings which are in the safety deposit vault of the Bank of Montclair, including a Panini & Wouverman, also a Salvate Rosa, are to be taken to Europe to be recognized by art authorities and the proper and highest prices are to be sought for them in sale and the sum obtained through these is to be given over to to charity, namely, to the poor children of Dresden, Saxony, Germany, for a summer home, among these pictures being a genuine Turner and Raephael and other famous and noted Masters, and they are known to be genuine a high price ought to be obtained sufficient to realize this the above.  Should more than twenty-five thousand dollars be obtained the balance is to be divided among my brothers and sisters heretofore mentioned, my half sister Martha Buetner at Erfurt Eisenwach to receive the sum of three thousand dollars for her little daughter, Lottie."   By the fifth item of the codicil the testatrix provides for the sale of her land at Pittstown, giving her half-sister some portion thereof, and then proceeds:   "The balance of the money or proceeds of said sale of farms and land to go to the *fund for the vacation colony for poor children* in Dresden, Saxony, Germany."—*Held*, (1) with respect to the question what property is devoted to the satisfaction of this bequest, that the same comprised such paintings as she had on storage at the Bank of Montclair, it being doubtful from the evidence whether she had on storage with

that bank any paintings of the character described by her as Old Master paintings, but it appearing that she did in fact have there on storage certain pictures which she meant to devote to the charity named by her; and *held further*, (2) with respect to the validity of the bequest as a charity, that the bequest contained in the will and in the codicil in that behalf is a valid exercise of the testamentary power; and *held further*, (3) that the fact (*a*) that no person or corporation was appointed to receive the bequest, that circumstance will not invalidate the bequest, inasmuch as equity never lacks a trustee; and (*b*) the direction that the pictures be taken to Germany for recognition by art authorities, or for any purpose, is not binding upon the executor, the provision in the will in that behalf being merely directory and not mandatory; and (*c*) as to the variance between the provision in the original will and that contained in the codicil, the original will making the gift to "the poor children of Dresden, Saxony, Germany, for a summer home" and the codicil providing that the balance of the money arising from the sale of the farms shall go for the "vacation colony for poor children in Dresden, Saxony, Germany," the will and the codicil must be construed together and with reference to each other, and thereby the testatrix had in mind at the time she executed the codicil the same gift and bequest that was in her mind at the time she executed the will in favor of the summer home for the poor children of Dresden.

4. By another bequest the testatrix gave to another legatee "a painting to be selected, and also a few Oriental rugs to be selected by her."—*Held*, that that portion of the bequest which relates to the painting is valid, but that the one which relates to the Oriental rugs is void, for uncertainty.

5. By another item of her will the testatrix made certain bequests to one of the witnesses to the will.—*Held*, barred by the statute.

6. By another item of her will the testatrix directs that her house on Upper Montclair avenue "on which rests a loan of $3,000 in the Bank of Montclair" shall be sold, &c. There was no loan of $3,000 obtained from that bank which was in any way a lien upon this land. The testatrix had borrowed $3,000 on her note, with collateral security, but there being nothing in the transaction or in the will or codicil charging that loan of $3,000 on the Upper Montclair avenue property—*Held*, that the executor, or Louisa Hasse, the half-sister, or perhaps they jointly, should sell the said property subject to the $4,000 mortgage in that paragraph mentioned.

7. Under item five of the codicil relating to the distribution of the proceeds of the sale of the farms of the testatrix at Pittstown, New Jersey, Louisa Hasse, the half-sister of the testatrix, claiming that she is entitled to $2,500 out of such proceeds, and the residuary legatees resisting this claim and asserting that she is only entitled to $500, or, in other words, enough to bring her total cash legacy up to $2,500—*Held*, that the testatrix intended that these farms, three in number, should be successively sold and that her half-sister Louisa should receive $2,500, all told from the proceeds of the several farms, the words "all told" referring not to the money legacy but to the farms.

On final hearing on bill, answer, replication and proofs.

*Mr. Paul W. Queen,* for the complainants.

*Mr. Louis A. Ziegler,* for the city of Dresden, Germany.

*Mr. John W. Queen,* for Louisa Hasse.

HOWELL, V. C.

This suit is brought by the executors of the will of Marie Auguste Buttner, who died on November 15th, 1911. Her residence was in Montclair. Her will and a codicil thereto were admitted to probate by the surrogate of the county of Essex.

The testatrix was born in Germany; she came to this country many years ago, and for the last twenty years of her life had charge of the German department of the high school of the city of Newark. All her relatives resided in Germany and still reside there, excepting her half-sister Louisa Hasse, who came to this country a few years ago at her request. The testatrix occupied apartments in an apartment-house in Montclair. Miss Hasse lived with her for a short time, but eventually she became a teacher herself and resided apart from the testatrix. Their relations were very friendly.

The testatrix was a connoisseur in art, and she had in her apartments at the time of her death a large number of pictures, nearly all of which were hung upon the walls, and she had likewise many pieces of bronze and other articles which usually pass under the name of art objects.

The claims made by the several defendants fully appear as the construction of each doubtful paragraph is discussed.

The first item of the will that is challenged is the second paragraph, which reads as follows:

"II. I give and bequeath to my half brother Oswald Hasse, of Dresden, and to my half sisters Mrs. Willy Lehman, Mrs. Liddy Kurse, Mrs. Helena Herring, of Germany, & Louisa Hasse, of N. J., to each and all above or to their heirs two thousand dollars."

It is claimed on the part of the residuary legatees, or some of them, that by this paragraph the testatrix appropriated the

sum of $2,000 to be divided among the five persons therein named, giving them $400 each. Such a construction is not admissible, however, for the reason that it would do violence to the word "each," which has a prominent place in the context. My reading of the phrase is "to each and every one of the above named persons," &c. I therefore conclude that the testatrix intended to give and did give to each one of the said five persons the sum of $2,000, or $10,000 in all.

The next item of the will to which criticism is directed is the third item, which reads as follows:

"III. To my sister Louisa Hasse, living in this country, I also give and bequeath my furniture and personal belongings." Under this item Louisa Hasse claims all the property which was in the apartment of the testatrix at the time of her death, including all the pictures, bronzes and other art objects situated therein. It appears by the testimony that the testatrix had or supposed she had a fine taste in matters of art, that she was a large purchaser of art objects, and that she had a great love and admiration for the collection she had made. She had filled her apartments with objects of this character; perhaps very few of them were used as necessary adjuncts to her housekeeping; so that it may be said that all or nearly all of the articles referred to were there for the purposes of decoration and ornamentation. It was urged on the argument that articles of mere decoration, as pictures and bronzes, could not by the most liberal interpretation of the will pass as furniture, but if the whole thereof were to be divided into articles useful and articles ornamental merely, one would find it difficult to determine the exact point of division. It would be difficult to say whether a certain picture should constitute an ornamental and decorative feature, or whether it was furniture. This has led me to the conclusion that on the face of the will itself the words "furniture and personal belongings" carry the contents of the apartment as they were at the time of the death of the testatrix. There is considerable authority for this position. In *Kelly* v. *Powlet (1763), Amb. 605,* the bequest was to the defendant of "her household furniture and farming utensils" which should be within or upon the premises

at her death. The court says: "The words 'household furniture' has as general a meaning as possible; it is incapable of a definition; it is capable only of a description; it comprises everything that contributes to the use or convenience of the householder or ornament of the house." The pictures which were hung up and were in cases were carried by the devise. In *Bridgeman* v. *Fitzgerald in re Londesborough (1881), 50 L. J. Ch. 9*, the testator gave to his wife during her life certain premises "and the statuary, furniture and other effects purchased by him therewith or which might be therein at the time of his decease." It was held by Vice-Chancellor Malins that while it was clear that the testator did not intend to give to his wife outright a valuable collection of pictures, he did mean that she was entitled to the enjoyment of them during her life.

In *Sumner* v. *Blakslee, 59 N. H. 242*, property was described in a chattel mortgage as follows, "meaning and intending hereby to convey all the furniture now in and belonging to the said Sumner house of whatever name and character and wherever situated in said house." These words were held to include pictures. In *Richardson* v. *Hall, 124 Mass. 237*, a bequest "of all the household furniture" carried pictures, bronzes and statuary which were in the house at the time of the death of the testator. And generally see *2 Wms. Ex. 468*. And finally, it was held in *Endicott* v. *Endicott, 41 N. J. Eq. 93*, that the term "furniture" embraces everything about the house that has been usually enjoyed therewith, including plate, linen, China and pictures.

I must therefore hold that it was the intention of the testatrix to give and bequeath to her half-sister Louisa Hasse all the contents of her apartment as they were at the time of her death.

The next paragraph of the will relates to a bequest to the poor children of Dresden for a summer home. Two questions arise out of it, the first one being as to what property is included in the bequest, and the second, whether the bequest is valid as a charitable use. The paragraph of the will reads as follows:

"IIII. My Old Master paintings which are in the safety deposit vault of the Bank of Montclair, including a Panini & Wouverman, also a Salvate Rosa, are to be taken to Europe to be recognized by art authorities

and the proper and highest prices are to be sought for them in sale and the sum obtained through these is to be given over to to charity, namely, to the poor children of Dresden, Saxony, Germany, for a summer home, among these pictures being a genuine Turner and Raephael and other famous and noted Masters, and they are known to be genuine a high price ought to be obtained sufficient to realize this the above. Should more than twenty-five thousand dollars be obtained the balance is to be divided among my brothers and sisters heretofore mentioned, my half sister Martha Buetner at Erfurt Eisenwach to receive the sum of three thousand dollars for her little daughter Lottie."

By the fifth item of the codicil she provides for the sale of her land at Pittstown, giving her sister some portion thereof, and then proceeds, "The balance of the money or proceeds of said sale of farms and land to go to the *fund for the vacation colony for poor children* in Dresden, Saxony, Germany." The first question that arises under this bequest is what property is devoted to its satisfaction. It seems to me very doubtful from the evidence whether she had on storage with the Bank of Montclair any paintings of the character described by her as Old Master paintings; but whether there were or not, as a matter of fact she did have on storage at that bank certain pictures which she meant to devote to the charity named by her, and I therefore conclude that the property which she devoted to the charity mentioned was such paintings as she had on storage in that bank.

Passing on to the next question, which relates to the validity of the bequest as a charity, we find that she directs these pictures to be sold and the sum to be given to the poor children of Dresden for a summer home. The bequest comes directly within the definition given of a charitable use by Mr. Justice Gray in the case of *Jackson* v. *Phillips, 14 Allen 556,* where he says: "A charity in the legal sense may be more fully defined as a gift to be applied consistently with existing laws for the benefit of an indefinite number of persons either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government; it is immaterial whether the purpose is called

charitable in the gift itself, if it be so described as to show that it is charitable in its nature." This definition was approved by Chancellor Runyon in *DeCamp* v. *Dobbins, 29 N. J. Eq. 36*, and by the court of errors and appeals in *MacKenzie* v. *Trustees of Presbytery of Jersey City, 67 N. J. Eq. 652*.

It will be observed that she denominates the bequest is to be a charity, although it sufficiently appears to be such from the context.

The bequest likewise comes within the definition of a charitable use written by Chief-Justice Beasley in the court of errors and appeals in *DeCamp* v. *Dobbins, 31 N. J. Eq. 671*, and within the doctrine announced in this court in *Trustees* v. *Wilkinson, 36 N. J. Eq. 141*, and *Hesketh* v. *Murphy, 36 N. J. Eq. 304*. The subject is discussed generally in *2 Perry Trusts,* § *699*.

I have no hesitation in declaring the bequest contained in the will and in the codicil to be a valid exercise of the testamentary power. There are, however, three matters arising out of the bequest which call for attention. One is the fact that no person or corporation was appointed to receive the bequest, and another is the direction that the pictures be taken to Germany for recognition, as she says, by art authorities. I see no reason why these pictures should be transported to Germany for any purpose. I do not think that the provision in the will is mandatory; it is merely directory; and this appears from the fact that the thing that was in the mind of the testatrix was that the pictures should bring a high price, or at least their full value, evidently believing that better prices could be obtained there than here. This was negatived by an expert picture dealer in his testimony; he was of the opinion that they could be sold as well here as in Germany. The pictures seem to be of comparatively small value, and it would be out of consonance with reason or with the ideas of the testatrix that a large sum of money should be expended in their transportation to Germany upon the chances of getting a higher price for them than could be obtained for them in New York.

The lack of a trustee will not invalidate the bequest. It is a well known saying that equity never lacks a trustee, and there

can be no difficulty whatever on that score. It appears from a document in evidence that the city of Dresden is authorized to accept bequests of this nature, but if it should be found not to be so authorized, this fact would not stand in the way of the validity of the bequest.

The third matter relates to the variance between the bequest in this behalf contained in the original will and that contained in the codicil. In the original will the gift is to "the poor children of Dresden, Saxony, Germany, for a summer home." The codicil provides that the balance of the money arising from the sale of the farms shall go to the fund for the "vacation colony for poor children in Dresden, Saxony, Germany." The will and the codicil must be construed together and with reference to each other. I think there can be no doubt but that the testatrix had in mind at the time she executed the codicil the same gift and bequest that was in her mind at the time she executed the will in favor of the summer home for the poor children of Dresden.

The next bequest concerning which there is any dispute is the one of Miss Hester D. Dean, to whom is given "a painting to be selected, and also a few Oriental rugs to be selected by her." That portion of the bequest which relates to the painting is valid, but the one which relates to the Oriental rugs is void, for uncertainty. No one can know what the testatrix had in mind when she said "a few Oriental rugs." A bequest of articles to be selected is not void. When there is such a bequest, and no person is appointed to make the selection, nor any details of the manner in which it shall be made are provided for, then and in such case the selection is made by the legatee. *Cleveland* v. *Carson, 37 N. J. Eq. 377.* The English rule is the same. *Jacques* v. *Chambers, 2 Coll. 435; Millard* v. *Bailey, L. R. 1 Eq. 378; 35 L. J. Ch. 312.*

All the bequests to Jennie F. Romer are void. She was one of the witnesses to the will, and is barred by our statute.

The next item of the will concerning which there is any dispute is paragraph 4 of the codicil. The testatrix there directs that her house on Upper Montclair avenue, "on which there

rests a loan of $3,000 in the Bank of Montclair," besides a mortgage of $4,000, shall be sold, &c. The evidence shows that there was no loan of $3,000 obtained from the Bank of Montclair which was or is in any way a lien upon this land. She had borrowed $3,000 of the Bank of Montclair on her note, with collateral security, but there is nothing in the transaction or in the will or codicil which charges that loan of $3,000 on the Upper Montclair avenue property. My opinion, therefore, is that the executor, or Louisa Hasse, or perhaps they jointly, should sell the said property, subject to the $4,000 mortgage, and divide the proceeds in accordance with the direction in that paragraph.

Item 5 of the codicil relates to the distribution of the proceeds of the sale of her farms at Pittstown, New Jersey. Louisa Hasse claims that she is entitled to the sum of $2,500 out of such proceeds. The residuary legatees resist this claim and assert that she is only entitled to $500, or in other words, enough to bring her total cash legacy up to $2,500. My construction of the will is that she intended that these farms, three in number, should be successively sold and that her half-sister Louisa should receive $2,500 all told from the proceeds of the several farms, the words "all told" referring not to the money legacy, but to the farms. To construe this paragraph according to the suggestion of counsel for the city of Dresden would compel an ascertainment of the value of the furniture and personal belongings of the testatrix which are given to her sister Louisa by the third item of the will. The words "all told," therefore, must relate either to the farms or to the total money value of all the legacies given to her sister. If applied to the total bequests to her it will be seen that the limitation would have been reached long before a resort could be had to the proceeds of the sale of the farms.

I will advise a decree in accordance with these views.