ADDISON A. RIGHTER and LOUIS HOOD, as executors of the last will and testament of William S. Righter, deceased, complainants,

*v.*

FIDELITY UNION TRUST COMPANY et al., defendants.

[Decided March 14th, 1932.]

*Messrs. Hood, Lafferty & Campbell (Mr. Louis Hood, of* counsel), for the complainants.

*Mr. William L. Brunyate,* for the defendants Pauline C. Woodruff and Mary Woodruff.

*Messrs. Pitney, Hardin & Skinner (Mr. Edward O. Stanley, Jr.,* of counsel), for the defendants Fidelity Union Trust Company and Yale University.

*Mr. George Whitefield Betts, Jr.,* and *Mr. Reese A. Alsop* (of the New York bar), for the defendants Addison Righter and Clara Righter Drake.

BACKES, V. C.

By the sixth clause of his will, William S. Righter ordered his executors to pay the federal death tax and New Jersey transfer tax and by codicil extended the direction to the payment of the taxes of any other state thus:

"Sixth: I direct my executors to pay all Federal estate taxes which may be levied upon my estate and also all inheritance taxes payable to any state by any legatee or devisee under this will because of any legacy or devise by this will made."

Objection having been lodged with the executors by the residuary beneficiaries to the payment of the taxes out of the residuary estate, they ask instructions as to their duty. The challenge involves a consideration of the whole will.

After directing the executors to pay debts and to "divide my estate as soon after my demise as possible, without detriment to all interests," the will reads:

"Second: I give and bequeath all the stocks and bonds of corporations, all government, state and municipal bonds and all real estate mortgages, with the bonds which said mortgages were given to secure, I own at the time of my demise, not otherwise hereinafter specially bequeathed, to the Fidelity Union Trust Company, of Newark, New Jersey, to be held by said Fidelity Union Trust Company of Newark as a trust, to collect the income therefrom. after deducting the legal fees, pay the balance of the income quarterly to Pauline C. Woodruff and Mary Woodruff, now living at 37 Chestnut Street, Newark, New Jersey, half to each as long as they may live, and after death of either, the entire net income to the survivor so long as she may live; at the death of the survivor of them, I give and bequeath the said funds and securities so held in trust, by said Fidelity Union Trust Company, to the Treasurer of Yale University of New Haven, Connecticut, to be used in the Sheffield Scientific School as the officers of that department think best; it is my desire that the said Fidelity Union Trust Company shall have full power to sell any securities, or foreclose any mortgage given to them in trust, and to reinvest the proceeds thereof in good and sufficient securities, but it is to make as few changes in the stocks, bonds or mortgages delivered to it, as the safety of the trust will permit."

Testator's household furniture is then given to the Misses Woodruff and a $500 bond to a cemetery company and:

"Fourth: I do hereby direct my executors should they find any of my stocks or bonds of any kind being used as collateral for loans I may have made, that they shall secure their release, by paying off the loans, by using other proceeds of my estate, and to assign, transfer and deliver the above stocks and bonds as bequeathed."

By the fifth clause, the testator's half interest in unimproved land held jointly or in common with his brother, Addison, is devised to him, and his hunting and fishing outfit is bequeathed to him. The sixth clause directs the payment of the death dues, and by the seventh two paintings are given to the city of Newark and a vase to a friend. An explanation for not providing for his invalid sister, Emma, because she has plenty, is the eighth clause and:

"Ninth: I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, wheresoever situate and howsoever constituted, as follows, to wit: three-fourths parts thereof in equal shares to my brother and sisters, Addison A. Righter, Florence R. Allsopp and Clara Righter Drake, and one-fourth part thereof in equal shares to the said Pauline C. Woodruff and Mary Woodruff, provided * * *" (here follows gifts over to prevent lapses).

By a substituted codicil for the tenth clause, the complainants are appointed executors with "full power to sell any or all of my real estate, * * * should they deem it wise and necessary so to do, to carry out the provisions of this my will."

Florence R. Allsopp predeceased the testator.

The personal property is appraised at approximately $300,000; the real estate close to $50,000.

The value of the second clause gift is about $290,000; the fifth clause devise appraisement is $13,500. The residue approximates $39,000 made up of $5,600 in bank and of improved real estate valued at $33,600. The value of the other bequests is trifling.

The federal tax is $161.19; the New Jersey transfer tax, nearly $20,000.

The taxes and the cost of administration will, in all probability, exhaust the residuary estate, if taken from that source, and this, the residuary beneficiaries contend, was not the intention of the testator, notwithstanding his explicit directions to his executors to pay the death dues, for, as they argue, he could not have meant to give them something and at the same time disinherit them. The appeal loses force upon reflection that six-sevenths of the estate goes to the Misses Woodruff for life and then to Yale University absolutely, while to them is given but a fragment, a fraction of the *residuum*, if there be a remnant, influenced perhaps by their affluence and their affliction. Their means, derived from their father's estate, were substantial. The testator was a bachelor; they were aged and childless; and, the ancestral line ending with their deaths, he turned his fortune to strangers as they must soon do with theirs. There was fraternal affection but more of practicality.

The federal death duty is imposed upon the devolution of property occasioned by death, and, payable by the executors, falls upon the residuary estate; the state transfer tax is upon the inheritance, charged against the beneficiary and deducted from his lot; the executors are accountable to the state for the payment. *In re Roebling's Estate, 89 N. J. Eq. 163.*

Because it is the executor's duty to *pay* the state tax, it is suggested by the residuary beneficiaries that the clause directing the executors to pay the tax was intended merely as a direction to perform their legal duty, like the direction to pay debts. To this there cannot be assent. The executor's statutory duty is solely to the state and is regulatory. Their duty to pay debts is imposed by law, not by the will; their duty to pay the tax is not by law, but by the will. Therein lies the distinction.

The contention that the language of the second clause is not sufficiently definite to warrant the making of the transfer tax, ordinarily payable by the legatee, out of the residuary estate, has no merit. Any form of expression that leads the judicial mind to the conclusion that that was the intention of the testator is sufficient. In *Gude* v. *Mumford, 2 Y. & C.*

(*Ex.*) *445*, Alderson, B., said: "It is clear that the prin-
·ciples upon which questions as to the payment of legacy duty
proceed are those that govern the construction of wills. In
order to arrive at the decision that a legacy is to be paid free
of duty, the court must be satisfied that the intention of the
testator in that respect has been clearly made out. *Prima
facie* the law must take its ordinary course, and the legacy
must be left in the circumstances in which the law places it;
nevertheless it is competent for the testator, by words, to
·direct otherwise * * *. But from the other cases (dis-
·cussed by the court), particularly that of *Barksdale* v. *Gilliat,*
it is clear that if you can collect from any direction contained
in the will that the testatrix's intention was that the legacy
·duty should be paid by the executor, the court will carry that
·direction into effect." See, also, *51 A. L. R. 45; 37 Cyc. 1577.*
Transferring the charge from the legatee to the executors
is indubitable evidence of the testator's intention that the tax
should be paid not by the legatees but out of the residuary
estate. No signficance to the contrary can be attached to
the words in the first clause enjoining the executors to speed-
ily settle the estate "without detriment to all interests."
The emphasis is upon expedition.

It is the further insistence that the second clause bequeath-
ing specified securities, "I own at the time of my demise,"
is a general legacy and consequently is primarily liable to
the payment of debts and charges in exoneration of the realty
devised by the residuary clause. That rotation of respon-
sibility the testator reversed by the direction that the execu-
tors pay the taxes and if necessary resort to the realty de-
vised by the residuary clause to free the legacies of liability.
The proposition is at war with the testator's expressed inten-
tion, that the legacy should be unencumbered by the tax levy.
Further, it is immaterial to the present inquiry whether the
legacy be treated as specific or general, for, by blending his
personal and realty in the gift of the residue, the testator
evinces the intention that the tax should be a charge preferen-
tial to both classes of property. *Corwine* v. *Corwine, 24
N. J. Eq. 579.* The rule of construction of that case has

been uniformly applied in this state as definitive of the testator's intention, in the absence of more.

The question whether the legacy in the second clause is specific or general has been argued and discussed in the briefs only as incidental to the main question; and as advice is not sought, none is given.

The testator's two aged friends, the Misses Woodruff, with whom he made his home for many years, were his chief concern, his *alma mater* was a convenience; the residuary beneficiaries trailed. Differentiating between the levy of federal and state death dues, shows a precise conception by the testator of the normal source of their payment, and indicates the shift in the charge he intended to make, and to that end, and to insure to the legatees the complete realization of their particular gifts, undiminished, the *residuum* was made available. The power given the executors to sell the real estate, if necessary, "to carry out the provisions of this my will" was not only a sanction but a mandate to relieve all the gifts of the burden of taxation.

The executors are advised that the taxes are payable out of the residuary estate.