Henry Kohl died March 10th, 1937, leaving a last will and testament which was probated before the surrogate of Monmouth County on March 22d 1937. His executors, the complainants, seek a construction of the will, and certain instructions. They submit these inquiries:
1. Do the provisions of the will of Henry Kohl require that the payments therein provided to be made to the widow, Lavenia B. Kohl, and the daughter, Louise M. Kohl, and the issue of said daughter, if any, be made to them only out of, and to the extent of, the net income of the estate of the decedent, or do the provisions of the will require that such payments be made at all events, regardless of the sufficiency or insufficiency of net income, and out of the corpus of the estate, if necessary?
2. If the payments to be made to the widow, and daughter, and issue of the daughter, are to be made out of, and only to the extent of, net income, are the executors or trustees required to reimburse the recipient or recipients of such net income for the amount by which the income tax of such recipient or recipients is increased by reason of the inclusion in their taxable income of the amount received by such recipient or recipients from the estate of this decedent?
3. Is the widow, Lavenia B. Kohl, obligated to reimburse the executors for the amount of estate taxes (United States, New Jersey and Florida) paid by the executors, as a result of the inclusion in the gross estate, for estate tax purposes, of the value of the real estate owned by decedent and the widow, as tenants by the entirety?
The facts have been stipulated.
The part of the will around which controversy revolves is paragraphs Eleventh and Twentieth. Section C-1 of paragraph Eleventh reads as follows: *Page 236 
"C-1. If my wife, Lavenia B. Kohl and my daughter, Louise Mazzola Kohl shall both survive me and my said daughter shall, at the time of my death, be unmarried and under the age of twenty-one years, then to pay to my said wife, the sum of seventy-five thousand dollars ($75,000.00) per year in equal monthly instalments until she shall die, or my said daughter shall marry under the age of twenty-one years, or attain the age of twenty-one years, or my said wife and my said daughter shall cease to live together, or until the period during which my executors shall have control of my estate shall end, whichever of such events shall first occur. Said sum and sums shall be for the use of my said wife and my said daughter. The expenditure of such sum and sums however, and how much thereof shall be expended for the benefit of my said daughter, shall be in the sole discretion of my said wife and no accounting shall be required of my said wife as to the expenditure of such sum and sums, or as to the amount thereof expended for the benefit of my said daughter."
Sections C-2, C-3, C-4, C-5, C-6 and C-7 of paragraph Eleventh are all co-related to section C-1 above quoted, and provide for certain contingencies as to testator's wife and on the marriage or death of his daughter.
Section C-8 of said paragraph Eleventh reads:
"C-8. Each year, during the period of control of my estate by my executors, after the payment of that portion of the net income of my estate hereinabove provided to be paid to my said stepmother and/or said Catherine Kohl, and/or my said wife and/or daughter and/or the issue of my said daughter, as the case may be, shall have been made, and my executors shall also have paid all necessary and proper administration charges, taxes and interest, and all other proper disbursements, the balance of net income remaining in their hands, shall be applied by them toward the repayment of monies borrowed by them, (if any), for the benefit of my estate, or for the payment of taxes assessed against my estate, or against that portion thereof herein given to my executors and/or trustees for the benefit of my said stepmother, of said Catherine Kohl, of my said wife, of my said daughter, and/or of said issue of my said daughter, until the period during which my executors shall have control of my estate shall end, or until all said sums so borrowed and all interest charges thereon shall have been paid and satisfied which ever event first occurs.
"In the event that all borrowed monies and interests, taxes and interest, and all proper disbursements and charges, shall have been paid and satisfied prior to the end of the period during which my executors shall have control of my estate, then I direct my executors to dispose of such balance of net income as follows:
"If on the occurrence of such event, the conditions as set out in Section C-1 of this paragraph exist, the whole of such balance of *Page 237 
yearly net income shall be paid over to my said wife for the purposes and under the same conditions and until the occurrence of the same events as are contained in such Section. * * *
"It being understood, however, that upon the sale of my National Grocery Company stock, as hereinafter provided for, all moneys borrowed by my said executors for any purpose and then remaining unpaid, and all unpaid taxes and other indebtedness, shall be paid from the proceeds of such sale."
The parts omitted from the above quoted section C-8 merely indicate how the surplus income shall be distributed on the happening of events and conditions in C-2 to C-7.
It may be pertinent to inquire:
(1) Did the testator by his will express his intentions in full?
(2) Does the will show his dominant intent?
(3) Is there any ambiguity, conflict, or inconsistency in the above quoted provisions from the will?
Answers to these queries, in the numerical order of their presentation, are as follows:
(1) Yes.
(2) Yes.
(3) No.
The well recognized rule governing the construction of wills is that the dominant idea pervading the testament must control; and minor considerations must yield if in conflict therewith. Secondary intent will be construed, if possible, so as to harmonize with the testator's paramount intent. Thompson onConstruction of Wills §§ 4, 46, 49 and 95. Miller v. Worrall,62 N.J. Eq. 776; 48 Atl. Rep. 586; Stout v. Cook, 77 N.J. Eq. 153; 75 Atl. Rep. 583; Johnson v. Bowen, 85 N.J. Eq. 76;95 Atl. Rep. 370; Sayre v. Kimble, 93 N.J. Eq. 30;114 Atl. Rep. 744; Rowley v. Currie, 94 N.J. Eq. 606; 120 Atl. Rep. 653;Byrne v. Byrne, 123 N.J. Eq. 6; 195 Atl. Rep. 848. It has truly been said "no will has a twin brother." In re Burton'sWill, 156 Misc. 175; 281 N.Y.S. 579. That perspicuous contribution to the pages of testamentary disposition is comprehensive. Apart from its legal implications it exhibits the wisdom and industry of its judicial author. Every will bears a distinctive outline; it *Page 238 
conveys its own message. In case of doubt in the language, we must look to the instrument executed by the decedent and from its "four corners" endeavor to ascertain the testator's predominant intent.
Vice-Chancellor Backes in Johnson v. Haldane, 95 N.J. Eq. 404; 124 Atl. Rep. 63, succinctly expresses the principle in the following language:
"In construing a will the predominant idea of the testator's mind, if apparent, is heeded as against all doubtful and conflicting provisions which might of themselves defeat it. * * *A clear gift in one clause cannot be taken away or cut down bydoubtful expressions in another clause, but only by express wordsor by clear implication." (Italics mine.)
Or as it is stated by our Court of Errors and Appeals inCoyle v. Donaldson, 91 N.J. Eq. 138; 108 Atl. Rep. 308:
"Whether such was the testator's meaning and intention * * * must be determined, not by fixing the attention on single words, but by considering the entire will and surroundings of the testator, when he executed the will, and by ascribing to him, so far as his language permits, the common impulses of our nature."
In the provisions of the second and third paragraphs of the will is reflected the love and affection, trust and confidence, which the testator holds for his wife and child. He was a very successful business man. He had amassed considerable wealth from his grocery business. His style of living was in keeping with his large fortune. He maintained a palatial estate in Rumson, New Jersey, and one at Palm Beach, Florida; their combined values exceed $100,000. The titles to those premises were held by him and his wife by the entirety.
The Twentieth paragraph of the will, among other things, states the time when the residue is to be transferred by the executors to themselves as trustees. Section C-1 of the aforesaid Eleventh paragraph has a counterpart in paragraph Twentieth, section C-1. In neither of the sections in paragraphs Eleventh and Twentieth, aforesaid, is there any limitation as to the source from which such payments of $75,000 are to be made. In my opinion, the legacy of $75,000 a year *Page 239 
is demonstrative in its nature; in form, it is an annuity and is a charge upon the whole estate.
Sections C-2 to C-7 of paragraph Eleventh of the will are provisions concerning the comfort, care, support, maintenance, and welfare of the wife and child, the life beneficiaries. They express certain possible conditions that may arise by virtue of which the annual payment of $75,000 must be apportioned instead of being left as mentioned in section C-1 of paragraph Eleventh. These sections contain no limitation as to the source of payment excepting only in one instance where the wife and mother should die during the child's minority; in that event, the executors are limited to the expenditure of $25,000 a year from income for the support and education of the orphan, or until she marries. Upon marriage, or the attainment of majority, that limitation is removed and the yearly payments, unlimited as to source, are revived (section C-4).
Giving support to the provision that annual payments were intended to be unlimited as to source, paragraph Seventeenth clearly and plainly expresses the testator's distinctive intent that none of the other bequests or legacies shall be payable within five years of his death, unless the executors elect to do otherwise. It will be noticed there is no direction of delay made in the payment to the life beneficiaries, stepmother, Catherine Kohl, wife and daughter; the testator wills that payments to them "shall commence at once." The phrase "shall commence at once" evidences the feeling of the testator for his loved ones. His provision that payment to them "shall commence at once" is an assurance to his family that they shall occupy no mean or secondary position to the institutional and other legatees and to possible issue of his minor daughter.
To limit the widow's annual payments to the ever present uncertainty of income, as counsel representing the residuary institutional beneficiaries in unison ask, would, in effect, be giving a strained meaning, as well as an unjustified construction, to the testator's explicit direction. It would be a complete repudiation of his outstanding order. The construction which the institutional beneficiaries conceive to be the proper one in the premises, would make the payments to the life *Page 240 
beneficiaries dependent upon the rise or fall of the testator's grocery business as operated and managed by the more or less trained or untrained executors; if their business efforts produced no profit or income, then no payments would be made to the life beneficiaries. Clearly, it was never the testator's intention to bind the loving objects of his bounty and his devotion to a prospect fraught with financial dangers. He never intended to subject their allowance to the business hazards of the "fat" and the "lean" years. Their monetary status, or well being, I am sure, was not to be controlled by the fluctuating report of a mercantile balance sheet.
The Nineteenth paragraph of the will discriminates between bequests or legacies to the life beneficiaries and those to collaterals, friends, employees and charities, in the payment of death taxes. The bequests to the life beneficiaries are to be free of tax, the estate absorbing; while the bequests to the other legatees are made subject to tax; the legatee, or legacy absorbing. The discrimination favoring his family in the payment of the death taxes indicates the testator's dominant intent to care for and protect those who were near and dear to him.
In the event that the yearly income should prove to be more than sufficient to meet the required payments to the life beneficiaries, section C-8, paragraph Eleventh, provides for the distribution of any possible surplus. That section is supplementary to sections C-1 to C-7 of the same paragraph, and is not interpretative or restrictive thereof.
Each year after the life beneficiaries have been paid their annual legacies, the executors are then to pay all necessary and proper administration charges, taxes and interest and all other proper disbursements. The balance of the net income is to be used to repay moneys that may have been borrowed by the executors for the benefit of the estate, or to pay taxes assessed against the estate "or against the portion thereof herein given to my executors and/or trustees" for the benefit of the life beneficiaries.
If, and when, the application of such net income liquidates all borrowed money and interest, all proper disbursements, and charges and all taxes and interest "the whole of such *Page 241 
balance of yearly net income" then goes to the wife and daughter in addition to the payments called for by sections C-1 to C-7, paragraph Eleventh.
In furtherance of his obvious solicitude for his wife and child, the testator empowered his representatives to borrow money when the income from his grocery business would be insufficient to meet the scheduled payments (paragraph Eighteenth of the will).
The law is well settled that "where an estate or interest is given in one clause of a will, in clear and decisive terms, the interest so given cannot be taken away or cut down by raising a doubt upon the extent and meaning of a subsequent clause, or by inference therefrom; but to justify a rejection of the first clause the language of the subsequent clause must be as clear and decisive as that of the first clause." Thompson on Wills § 85;see, also, § 96. Johnson v. Haldane, supra; 28 R.C.L. 241 ¶206; 69 C.J. 112, 113, 114, 115 ¶ 1158.
"* * * a residuary clause cannot limit or detract from that which has been previously given, nor can such clause place a construction on a previous clause in order to create a residue."Thompson on Wills § 90.
When the testator wanted to limit his benefactions to income he knew how to do it, and he did do it as the provisions in section C-3 of the Eleventh paragraph and in the Twenty-first paragraph make apparent.
In the Twenty-first paragraph of his will the testator distinguished most clearly between the source of the primary gift of $75,000, and the discretionary gift of $25,000. The primary gift is unlimited as to the source from which it is to be obtained; while the discretionary gift is directed to be paid from income. The latter gift being subject, however, to the payments for administration expenses, taxes, borrowed money, c.
Further reflecting the intent of the testator that his chief concern was his family is the provision in paragraph Twenty-eighth of his will which resorts to the doctrine that a bequest or legacy in lieu of dower acquires priority over all other legacies and need not abate in the event of a deficiency of *Page 242 
assets. 28 R.C.L. 304; Plum v. Smith, 70 N.J. Eq. 602;62 Atl. Rep. 763; Howard v. Francis, 30 N.J. Eq. 444; Bray v. Neill'sExecutrix, 21 N.J. Eq. 343; Perrine v. Perrine, 6 N.J. Law 133;Justice v. Justice, 18 Atl. Rep. 674; Sherman v. Riley
(R.I.), 110 Atl. Rep. 629.
There is ample authority for the proposition that where the testator directs his executors, pending the filing of their account and the determination of the income to be derived, to pay a specified sum per month for support and maintenance during that period, the amounts so payable will be chargeable against the principal and not against the beneficiaries' share of the income.69 C.J. 1196 § 2520.
The gifts to the favored beneficiaries are, as stated above, annuities. There is a well defined distinction between an income and an annuity. Income arises from the profits after deducting all necessary expenses and charges, and may be uncertain in amount. An annuity is an amount certain directed to be paid absolutely and usually without contingency. 3 C.J. 201 § 2 and212 § 29; Merritt v. Merritt, 43 N.J. Eq. 11;10 Atl. Rep. 835; Welsh v. Brown, 43 N.J. Law 37; Pennington v.Metropolitan Museum of Art, 65 N.J. Eq. 11; 55 Atl. Rep. 468;Steelman v. Wheaton, 72 N.J. Eq. 626; 66 Atl. Rep. 195.
The gifts to the testator's widow here are fixed; the order and direction to pay is absolute; and the complainants as executors and trustees are instructed to observe it.
In Congdon v. Commissioner, 99 Fed. Rep. 2d 318, the court observed as follows (at p. 322):
"It seems reasonable to assume that if Mr. Congdon had intended that Mrs. Congdon should be paid the $25,000 annuity only out of the income of the trust estate, he would have so expressly provided."
And (at p. 323):
"The fact that the testator provided that the annuity to Mrs. Congdon was to be paid out of income does not negative an intent on his part that it should be paid out of the corpus of the estate if there was no income. See Wheaton v. Woell, 182 Minn. 212; 234 N.W. Rep. 14; Mary Ink v. Commissioner,35 B.T.A. 846. We are convinced that, under the *Page 243 
terms of the will, the trustees, if they had withheld from Mrs. Congdon, during any year in which the trust estate failed to produce a net income, the $25,000 which they were directed by the testator to pay to her, would have violated their trust and could have been compelled to pay it to her out of the corpus of the estate."
In re Langhaar, 125 N.J. Eq. 374; 5 Atl. Rep. 2d 744;Delaney v. Van Aulen, 84 N.Y. 16. Thompson on Wills 727 § 572,
says:
"* * * if a specified sum is directed to be paid periodically, and not out of income and profits, it must be paid in all events. Of course, being a periodical payment, resort would first be had to income; but, if that be insufficient, then to the capital orcorpus of the estate."
Since Mrs. Kohl is here declared to be entitled to the annuity of $75,000, and the monthly payments thereon were to have commenced at the time of the testator's death, and such payments not having been fully made, the executors are therefore directed to pay to her the difference between the sums they have paid her in each year since the testator's death and the $75,000 per year plus interest. In addition, they are directed to pay any and all surplus income that may have arisen in any year for the period of Mrs. Kohl's life, or until such time as situations may arise which require the application of the provisions of other paragraphs.
The executors upon taking over as trustees, should as trustees, pay Mrs. Kohl $75,000 per year out of the trust by way of an annuity, plus surplus income (Twentieth C-8), as long as the factual situation contemplated by paragraph Twentieth, section C-1, exists; and $50,000 and $25,000 per year out of such trust to the said widow and daughter, respectively, as situations arise which require the application of other sections of paragraph twentieth.
The Rumson, New Jersey, home and the Florida home at Palm Beach, owned by the decedent and his wife as tenants by the entirety, as aforesaid, were required by the Federal Estate Law to be included in the return by the executors in order to determine the federal estate tax. The executors assert that by including these homes in the return they *Page 244 
increased the estate's tax by the sum of $40,004.69. They now ask for instructions as to what, if any, action they should take against the widow to recover that amount.
The widow denies liability for the alleged tax increase. She challenges the jurisdiction of this court to pass upon that question, and contends that the point involved is a purely legal one; not cognizable here, and that, if the executors are entitled to a remedy, such remedy lies at law. The Carbone Corp. v.First National Bank, 130 N.J. Eq. 111; 21 Atl. Rep. 2d366. The complainants meet her contention with the assertion that equity having once acquired jurisdiction may, in its discretion, retain it to render incidental relief. 21 C.J. 134 §117. While counsel for the life beneficiaries do not question the power of the court to instruct fiduciaries, and concede that the request for instructions as to the source of payments to the wife and daughter properly invokes equitable jurisdiction, they, however, charge that the subject-matter of the federal estate tax is in no way allied to the request for instructions.
They take the further position that they are entitled to a trial by jury in that matter, claiming such right is reserved by statute. 21 C.J. 137 § 118; 138 § 119; 148 § 127. Shaw v. G.B.Beaumont Co., 88 N.J. Eq. 333; 102 Atl. Rep. 151.
Paragraph Nineteenth of the testator's will seems, in a measure, to answer the executors' question as to liability for the federal taxes. It authorizes the executors to compromise and adjust all taxes "claimed to be due from my estate." The federal estate tax is payable in the first instance by the executor.Turner v. Cole, 118 N.J. Eq. 497; 179 Atl. Rep. 113. The estate is made liable to the government for the payment. The beneficiaries are not. The executors have paid the tax. It is my opinion, the estate should absorb this tax. That conclusion is reached after considering all the circumstances surrounding the execution of the testator's will, its provisions, his evident happy and contented family life, the sumptuous style in which he and they lived, and the elaborate and expensive home maintained and occupied by them. He wanted his widow to have ample funds to maintain her accustomed style of living, not merely the $75,000 annuity *Page 245 
from his estate, but, in addition, the surplus yearly income under certain circumstances, and $25,000 per year more, out of income, if the trustees deemed the payment advisable. Also, he directed that his estate should absorb "all inheritance and/orother taxes imposed upon * * * trust funds, legacies, gifts and/or devises" set up or given in the will to his stepmother, Catherine Kohl, his wife and daughter, or the issue of the daughter, at the same time requiring his executors to deduct from all other gifts, the proper tax or part thereof allocatable thereto (paragraph Nineteenth).
Furthermore, by paragraph Tenth, he bequeathed to his wife his household furniture, personal effects, c. He had in mind apparently that his wife and child should continue to live in a manner commensurate with their recognized social standing without change, alteration or interruption.
Counsel for the institutional beneficiaries rely on the ruling in Gaede v. Carroll, 114 N.J. Eq. 524; 169 Atl. Rep. 172, as controlling the tax payment. That case is to be distinguished from this matter. The court in the Carroll Case found no intent to absorb all federal taxes. It declared that since the ninth clause of decedent's will provided for payment of inheritance taxes levied or assessed against the wife's share given in the will out of the residuary estate, it was to be inferred that he intended to relieve his residuary estate of its legal burden to pay death taxes imposed upon the estate and transferred it to the wife since she acquired title as surviving tenant by the entirety and not through her husband's will. In the instant case, in addition to specific directions that the benefactions for his wife and child were to be tax free, the testator expressly authorizes and empowers his executors to pay all death taxes claimed to be due from his estate.
The Federal Estate Tax Law reads as follows:
"U.S.C.A. Title 26, Section 426(b), 1934 Edition, now Title 26, Section 826 (b) — `If the tax or any part thereof is paid by, or collected out of that part of the estate passing to or in the possession of, any person other than the executor in his capacity as such, such person shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate *Page 246 
or whose interest is subject to equal or prior liability for the payment of taxes, debts, or other charges against the estate, it being the purpose and intent of this sub-chapter that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution.'"
See Fidelity Union Trust Co. v. Suydam, 125 N.J. Eq. 458;6 Atl. Rep. 2d 392; Farmers' Loan and Trust Co. v.Winthrop, 238 N.Y. 488; 144 N.E. Rep. 769; certiorari denied,266 U.S. 633; 45 S.Ct. 225; 69 L.Ed. 479. See, also,Commercial Trust Co. v. Millard, 122 N.J. Eq. 290;193 Atl. Rep. 814; Morristown Trust Co. v. Childs, 128 N.J. Eq. 524;17 Atl. Rep. 2d 559.
All the circumstances point to the conclusion that the decedent intended that the payment of the federal taxes should be paid by his estate. Righter v. Fidelity Union Trust Co., 110 N.J. Eq. 169; 159 Atl. Rep. 393.
The instructions to the complainants will be advised in an order conforming with the determinations hereinabove expressed.