On January 20th, 1943, the will of Edgar Palmer, who died on January 8th of the same year, was probated in the Prerogative Court. Zilph Hayes Palmer, the testator's wife, Eugene H.B. Watson and Central Hanover Bank and Trust Company, qualified as executors. The executors now ask for instructions as to certain matters which may be involved in the administration of the estate.
In brief, the will provides for a devise of decedent's real estate and specific bequests of tangible effects (Article Second) and specific bequests of stocks and bonds of Princeton Municipal Improvement (Article Sixth), and these general legacies:
1. Zilph Hayes Palmer, decedent's wife, $1,000,000 (Article Third).
2. Trustees in trust for decedent's daughter, Zilph Palmer Devereux (named in the will as Zilph Palmer), $2,000,000 (Article Fourth). This article provides that one-half of the corpus
shall be distributed to Mrs. Devereux on attaining the age of thirty (30) years, and the remaining one-half continued in trust in her lifetime, remainder to her descendants, and, in default of descendants, to Mrs. Palmer, or if she be then dead, to The Trustees of Princeton University. *Page 519 
3. James E. Hayes, brother-in-law, $1,000,000 (Article Fifth (a)).
4. Helen Hayes Watson, sister-in-law, $1,000,000 (Article Fifth (b)).
5. Eugene H.B. Watson, brother-in-law, $1,000,000 (Article Fifth (c)).
Decedent left his entire residuary estate to his wife, Zilph Hayes Palmer, outright (Article Tenth).
Article Eighth provides that estate and inheritance taxes chargeable or payable upon decedent's estate shall be paid from his residuary estate. This article reads:
"Eighth: I direct that all estate, legacy, transfer, inheritance and succession taxes which may be imposed, chargeable or payable upon my estate or any legacy, bequest or devise herein, whether of capital or income and whether in trust or otherwise, shall be a charge against and shall be paid from my residuary estate."
Article Thirteenth authorizes the executors to borrow money to provide, among other things,
"* * * for the payment of, in whole or in part, any estate, legacy, transfer, inheritance or succession taxes that may be levied upon my estate or upon the devises, legacies or bequests under my will, * * *."
In a trust agreement dated December 8th, 1931, decedent testator transferred to the Central Hanover Bank and Trust Company, as trustee, stocks and bonds in trust. The agreement required the trustee to hold, invest and reinvest the trust estate, and collect and receive the income thereof and pay the net income in equal monthly payments to Mrs. Zilph Hayes Palmer, aforesaid, during her lifetime. Upon her death the principal of the trust estate then remaining is to be divided into 100 equal shares and disposed of as follows:
(a) 30 shares are to be set up in three separate trusts of 10 shares each, one trust to be held for the benefit of each of the following for his or her life:
Helen Hayes Watson (grantor's sister-in-law).
Eugene H.B. Watson (sister-in-law's husband).
James E. Hayes (grantor's brother-in-law). *Page 520 
As each of these beneficiaries die, the shares held for his or her benefit are to be paid over to the Trustees of Princeton University absolutely.
(Article 1, Paragraph Third; Exhibit C-2).
(b) Absolute gifts of:
7 1/2 shares to John Morris Legendre.
1/2 share to Sidney J. Legendre.
1/2 share to Carey S. Sturges.
1 1/2 shares to Kathryn C. Campbell.
(Article 1, Paragraph Fourth; Exhibit C-2.)
(c) If any of those named in (a) and (b) predecease the grantor's wife (the primary life beneficiary) their shares are to be paid over to the Trustees of Princeton University on the death of the grantor's wife.
(Article 1, Paragraph Fifth; Exhibit C-2.)
(d) 40 shares are to be held in trust for the benefit of the grantor's daughter, Zilph Devereux, during her lifetime. Upon her death, these shares are to be paid over to her issue then living in equal shares per stirpes, and if no issue survives, to those appointed in the last will and testament of Zilph Devereux. If this power is not exercised, these shares are to pass as intestate property of Zilph Devereux. If Zilph Devereux does not survive her mother (the first life beneficiary), these shares are to be distributed to the issue of Zilph Devereux surviving at the time of the death of her mother, and if no issue so survives, to those appointed in the will of Zilph Devereux. And if this power is not exercised, these shares are to be distributed as intestate property of Zilph Devereux.
(Article I, Paragraph Sixth; Exhibit C-2.)
(e) 20 shares are to be set up in trust and the net income paid over in the following manner:
(1) 50% of the income to be divided equally among the following charities:
The Children's Village.
New York Women's League for Animals.
Seamen's Church Institute.
Babies Hospital of the City of New York.
Henry Street Settlement. *Page 521 
(Article I, Paragraph Seventh, Clause (1); Exhibit C-2.)
(2) 33% of the income to the Trustees of Princeton University for the salary of an incumbent of a chair in its School of Public and International Affairs.
(Article I, Paragraph Seventh, Clause (2); Exhibit C-2.)
(3) 17% of the income to the Trustees of Princeton University to be used to continue the Zilph H. Palmer Travel Scholarships.
(Article I, Paragraph Seventh, Clause (3); Exhibit C-2.)
(f) The income bequests made in (e) are subject to the provision that, out of the income accruing in the first year after the death of the grantor's wife, the following bequests are made:
 John Connor ................................ $1,000
 Harvey E. Thomas ........................... 1,000
 Mary D. Shay ............................... 1,000
 Mrs. Louise Morgan ......................... 1,000
 Patrick Mahan .............................. 500

And to each person in the employ of the grantor's wife at the time of her death, as a domestic servant, and has been in such employment for at least two years, $200 plus $25 for each additional year or major fraction thereof, but in no case more than $500.
(Article I, Paragraph Seventh, Clause (1); Exhibit C-2.)
The agreement provides that, subject to the restrictions set forth in Article IV, the trustee may continue to hold the property conveyed to it; may from time to time sell or dispose of all or any part of the same; and may invest and reinvest the proceeds of sale of any of the trust property. The trustee is given authority to invest in legal investments and is not required to furnish any bond or security. The agreement confers on the trustee various other powers to facilitate management of the trust estate, and provides that the trustee, unless otherwise provided in the trust indenture, *Page 522 
may pay out of the income received by it as trustee of any trust therein all expenses of such trust and all taxes which may be properly assessed against such trust estate or any beneficiary thereof. (Article III, Exhibit C-2.)
By Article IV, Mrs. Palmer is given the power during her lifetime to direct the sale or other disposition by the trustee of the whole or any part of the trust property, and the investment or reinvestment of any cash in the hands of the trustee, and to direct the exercise or non-exercise of any right of conversion or subscription. The trustee is fully protected in acting upon any such direction of Zilph Hayes Palmer. However, in case of an emergency or where the trustee has given Mrs. Palmer written notice of its recommendation that property should be sold or disposed of or certain investments should be made, and no reply is received in thirty days, the trustee may proceed to exercise its discretionary powers.
By written instrument, signed and duly acknowledged by her and delivered to the trustee, Mrs. Palmer is also given the right and power at any time and from time to time during her lifetime to (Article II, Exhibit C-2):
(a) Change the disposition made of the income of the trust during her lifetime.
(b) Change the disposition of all or any part of the principal or income of the trust estate upon her death.
(c) Change, enlarge or restrict the powers conferred upon the trustee.
(d) Change any of the other terms or provisions of the trust agreement except the compensation of the trustee.
(e) Take and receive absolutely all or any part of the principal of the trust estate during her lifetime.
The rights and interests of all other persons under the trust agreement are subject to the exercise of those rights. Mrs. Palmer has not, to date, exercised the powers granted to her under Article II of the trust agreement (Transcript, page 22).
It is further provided that this trust agreement shall be construed according to the laws of the State of New York, where it is made and where it is to be enforced. (Article VII, ExhibitC-2.) *Page 523 
At the time of the death of Edgar Palmer, the principal fund of this trust had an estimated value of approximately $2,791,000. (Exhibit C-8.)
On the same day, December 8th, 1931, Mrs. Palmer also executed a trust agreement in favor of her husband, Edgar Palmer, the decedent, which is similar to the agreement made by him for her benefit. (Exhibit C-3.) She likewise named the Central Hanover Bank and Trust Company trustee. Her trust agreement directed the bank to pay the net income of the trust estate to her husband during his lifetime, and upon his death the principal of that trust then remaining is to be divided into 100 shares and disposed of as follows:
(a) 30 shares are to be set up in three separate trusts for the benefit of Helen Hayes Watson, James E. Hayes and Eugene H.B. Watson. This disposition is identical with that made for the same beneficiaries in the trust agreement made by Edgar Palmer.
(Article I, Paragraph Third; Exhibit C-3.)
(b) Absolute gifts of
10 shares to Norman H. Donald.
10 shares to Mrs. Elsie S. Peters.
10 shares to Mrs. Etta C. Murray.
(Article I, Paragraph Fourth, Exhibit C-3.)
2 1/2 shares to the University Cottage Club of Princeton University.
(Article I, Paragraph Seventh; Exhibit C-3.)
Mrs. Murray predeceased Edgar Palmer, and these 10 shares are therefore to be paid to the trustees of Princeton University. (Article I, Paragraph Fifth; Exhibit C-3.) If the legal existence of the Cottage Club has terminated, the shares bequeathed to it are given to the Trustees of Princeton University. (Article I, Paragraph Seventh; Exhibit C-3.)
(c) 30 shares are to be held in trust for the benefit of the grantor's daughter Zilph Devereux during her lifetime. With the exception that it is 30 shares instead of 40 shares this provision is identical to the one in the trust agreement made by Edgar Palmer.
(Article I, Paragraph Sixth; Exhibit C-3.) *Page 524 
(d) 7 1/2 shares are to be set up in trust and the income thereof divided equally among the following charities:
St. John's Guild.
The American Society for the Prevention of Cruelty to Animals.
Children's Aid Society.
(Article I, Paragraph Seventh; Exhibit C-3.)
(e) Similar to the trust made by Edgar Palmer, this agreement provides that the income bequests made in (d) are subject to the provision that, out of the income accruing in the first two years after the death of grantor's husband, Edgar Palmer, the following bequests are made:
 Norman H. Donald ........................... $1,000
 John Connor ................................ 1,000
 Harvey E. Thomas ........................... 1,000
 John F. Fulbeck ............................ 1,000
 John E. Cullen ............................. 1,000
 Fred J. Baechtold .......................... 1,000
 Mrs. Louise Morgan ......................... 1,000
 Capt. Robert F. Lathigee ................... 1,000

And to each person in the employ of the grantor's husband at the time of his death, as a domestic servant or a member of his yacht's crew and has been in such employment for at least two years, $200 plus $25 for each additional year or major fraction thereof, but in no case more than $500.
(Article I, Paragraph Seventh; Exhibit C-3.)
Mrs. Palmer's trust agreement extends the same powers to the trustee, with like restrictions as the trust agreement made by her husband. It also provides therein similar powers of control and disposition to the first life beneficiary as that given by the decedent to her in his trust agreement aforesaid; and it provided that this trust agreement shall likewise be construed according to the laws of the State of New York (Article Seven,Exhibit C-3). The principal of that trust fund at the time of Edgar Palmer's death had an estimated value of $2,960,000 (Exhibit C-10).
On December 30th, 1935, the decedent executed a trust agreement for the benefit of his daughter, Zilph Devereux (Exhibit C-4). He thereby transferred to the Central Hanover *Page 525 
Bank and Trust Company, as trustee, various stocks and bonds, which the trustee is to hold, invest, and reinvest, collect and receive the income thereof and pay the net income in equal monthly payments to the grantor's daughter, Zilph Devereux, during her lifetime; and upon her death, the securities and property then constituting the principal of the trust estate are to be disposed of as follows (Article First, Paragraph (a);Exhibit C-4):
(a) Transfer the trust estate in equal shares per stirpes to the issue of Zilph Devereux then living.
(b) If there be no such issue, to those appointed in the last will of Zilph Devereux.
(c) If this power of appointment is not exercised, then the principal fund is to be divided into three equal shares, and one share paid over to each of the following:
Helen Hayes Watson, James E. Hayes, Eugene H.B. Watson.
If any of these persons predecease Zilph Devereux, the share of such person shall upon the death of Zilph Devereux, pass as intestate property of Zilph Devereux, had she died intestate a resident of New Jersey.
This trust indenture confers similar powers, with similar restrictions, on the trustee as the trust made by Edgar Palmer for the benefit of his wife in 1931. Article Fourth confers upon the life beneficiary, Zilph Devereux, powers of control over the trustee and the trust estate. Zilph Devereux may, during her lifetime, direct the retention, sale or other disposition by the trustee of the whole or any part of the trust estate, at any time, and direct the investment or reinvestment of any cash in the hands of the trustee. The trustee shall not, during the lifetime of Zilph Devereux, take any action whatever with respect to the disposition of any part of the trust estate, except pursuant to the directions of Zilph Devereux.
By Article Second, this trust agreement vests Zilph Devereux with the same powers of disposition over the income of the trust, the disposition of the trust estate, and the income thereof, and the other terms and provisions of the trust indenture made by Edgar Palmer in 1931 for the benefit of his wife. Zilph Devereux has not, to date, exercised the powers *Page 526 
granted to her under Article Second. (Transcript, page 22.) And it is provided that this trust agreement is to be construed according to the laws of the State of New York (Article Eighth,Exhibit C-4).
At the time of the death of Edgar Palmer, the principal fund of this trust had an estimated value of approximately $95,500. (Exbibit C-12.)
The questions upon which the complainants seek the aid and advice of the court, in substance, are as follows:
1. Whether or not under the Eighth Article of the will the taxes therein mentioned include taxes upon the property forming the subject-matter of the trust indentures.
2. Whether or not under the Tenth Article of said will the residue and remainder of said decedent's estate includes the property forming the subject-matter of the trusts.
3. Whether or not by the true construction of the trust indentures the executors should include the property forming the subject-matter of the trusts as part of the estate of Edgar Palmer.
4. Whether or not the provisions of the trusts conferring upon the first life beneficiaries the right to alter and change the trust indentures require the executors of said will to include the subject-matter of the trusts as part of the estate of Edgar Palmer.
5. Whether or not the provisions of the trusts to the effect that said indentures shall be construed according to the laws of the State of New York, where they were made and where they are by their terms to be enforced, require the executors to include the subject-matter of said trusts as part of the estate of Edgar Palmer.
6. Whether or not the executors of Edgar Palmer are entitled to reimbursement from the trust funds or any of them for the whole or any part of the taxes for which the executors may be held liable in the first instance.
On August 15th, 1943, after the original bill was filed, there was born to said Zilph Devereux, daughter of Edgar Palmer, a daughter, Lindley R. Devereux, who has been made a party defendant to this proceeding.
Zilph Hayes Palmer in her individual capacity admits the *Page 527 
allegations in the bill of complaint and joins in the complainants' prayer; and further answering the complaint she says:
(1) The taxes mentioned in the Eighth Article of the will of Edgar Palmer do not include any taxes upon the property forming the subject-matter of the inter vivos trusts; under proper construction of the will of Edgar Palmer, it was the intent of Edgar Palmer, and he has directed that any and all transfer inheritance and estate taxes which may be assessed against, upon or with respect to these trust funds shall not be paid from his estate, but shall be allocated and apportioned to and paid out out of and from the trust funds.
(2) Defendant Central Hanover Bank and Trust Company, trustee of these trust funds, is liable for and should be directed to pay to complainant executors transfer inheritance and estate taxes which may be assessed or imposed against, upon or with respect to any one or more of the inter vivos trusts, and the executors are entitled to reimbursement from those trusts for the whole of any such taxes for which complainant executors may be held liable in the first instance.
(3) In any event, under and by virtue of the provisions of section 124 of the Decedent Estate Law of New York, the trusts are liable for and required to pay any and all transfer inheritance and estate taxes that may be assessed or imposed upon or with respect to any of the inter vivos trusts.
(4) Any New Jersey transfer inheritance taxes which may be assessed or imposed against any of the trusts are payable from and out of the trust or trusts which may be included in the assessment of such taxes.
The defendants Zilph Devereux, Helen Hayes Watson and James E. Hayes also contend that any and all transfer inheritance and estate taxes which may be assessed against, upon or with respect to the inter vivos trusts shall be allocated and apportioned to and paid out of and from the trust funds. These defendants, it will be observed, have interests in the trusts created by Edgar Palmer for the benefit of his wife, which are similar to those conferred by Mrs. Palmer's trust agreement — which interests become vested in possession and enjoyment upon the death of Mrs. Palmer. *Page 528 
With the exception of three charitable beneficiaries under the trust, the other answering defendants have joined in the complainants' prayer for instructions. The defendants The Children's Village, Seamen's Church Institute of New York, Henry Street Settlement and Presbyterian Hospital of New York (into which the Babies Hospital of New York has been merged) argue that the transfers made by Edgar Palmer in 1931 and 1935 (ExhibitsC-2 and C-4) are not subject to any death taxes upon his death, and that any death taxes that may be imposed with respect to the trust created by defendant Zilph Hayes Palmer (ExhibitC-3) should be apportioned to that trust.
The guardian ad litem for Lindley R. Devereux, urges that all state and federal estate and transfer inheritance taxes imposed upon the taxable estate of Edgar Palmer should be paid out of his testamentary estate without apportionment between the testamentary estate and such trusts that may be included in his taxable estate.
It is the contention of Zilph Hayes Palmer that both federal and state estate and inheritance taxes imposed upon or with respect to the three inter vivos trusts should be allocated and apportioned to and paid out of and from the trust funds, and that the executors of the estate of Edgar Palmer are entitled to reimbursement from defendant Central Hanover Bank and Trust Company, as trustee of these funds, for the whole amount of any such taxes for which the executors may be liable in the first instance.
Article Eighth of the will of Edgar Palmer expresses in clear language the intention of the testator that his residuary estate should be liable only for such estate and inheritance taxes that would be imposed upon his testamentary estate. No other conclusion can be reached in view of the following language of the article:
"Eighth: I direct that all estate, legacy, transfer, inheritance, and succession taxes which may be imposed, chargeable or payable upon my estate or any legacy, bequest ordevise herein, whether of capital or income and whether in trust or otherwise, shall be a charge against and shall be paid frommy residuary estate." (Italics mine.)
It is obvious that the trusts form no part of decedent's testamentary estate; and for a court, in the circumstances, *Page 529 
to assert that they do and thus burden the estate with the payment of taxes due thereon would, in effect be decreeing a judicial larceny. Neither settlor conferred upon the other any power to appoint by will. The decedent did not exercise any of the powers conferred upon him by Mrs. Palmer in her trust agreement.
It is the duty of the court to construe a will as written. It is not within its province to hazard a conclusion through the mental processes of a guess. If the language is not ambiguous and the intention is signified by apt words and phraseology, then there is no room for judicial construction. Courts are bound to regard words in their usual and most known signification, according to their natural and reasonable meaning. Green v.Green, 134 N.J. Eq. 479; 36 Atl. Rep. 2d 217.
In Stout v. Cook, 77 N.J. Eq. 153; 75 Atl. Rep. 583, the court said:
"The paramount rule for the construction of testamentary instruments is that the court must strive to ascertain the intention of the testator as expressed by the words of the instrument. Such intention, if so ascertainable, will prevail over technical rules and will disregard the common, ordinary meanings of words and adopt such meaning as can be deduced from the testator's intention. This has long been the settled rule in England and America and needs no citation of authorities for its support."
See In re Fisler's Estate, 131 N.J. Eq. 310; 25 Atl. Rep.
2d 265.
All estate and inheritance taxes that may be imposed upon "myestate or any legacy, bequest or devise herein" the testator says are to be paid from the residuary estate. (Italics mine.) There is no ambiguity whatever in this quoted direction. Theinter vivos trusts, he does not mention or consider in his testament; and, consequently, implies they are not a part of "myestate * * * herein." (Italics mine.) There is not a single word in the article to indicate that the testator had any intention of charging his residuary estate with the payment of estate and inheritance taxes that would or might be imposed forinter vivos dispositions. The testator's expression *Page 530 
"my estate * * * herein" is a definite and explicit phrase. It has a fixed and limited meaning; it is positive, clear-cut and free from doubt. It conveys an inference of existing title or ownership in the maker of the phrase and leads to the single conclusion that he had in mind the payment only of such taxes which might be levied upon his testamentary gifts or devises.Farnum v. Pennsylvania Company for Insurance, c., 87 N.J. Eq. 108; 99 Atl. Rep. 145; affirmed, 87 N.J. Eq. 652;101 Atl. Rep. 1053; Mayer v. Tucker, 102 N.J. Eq. 524; 141 Atl. Rep. 799.
Our Court of Errors and Appeals has left no doubt as to its attitude on questions such as are here involved; and the following cases are cited as having a bearing thereon: Gaede v.Carroll, 114 N.J. Eq. 524; 169 Atl. Rep. 172; Commercial TrustCo. v. Millard, 122 N.J. Eq. 290; 193 Atl. Rep. 814; FidelityUnion Trust Co. v. Suydam, 125 N.J. Eq. 458; 6 Atl. Rep.
2d 392; Morristown Trust Co. v. Childs, 128 N.J. Eq. 524;17 Atl. Rep. 2d 559.
The state inheritance tax is a tax imposed upon the transfer of property (R.S. 54:34-1). While the executors are made personally liable for the payment of such tax (R.S. 54:35-2), nevertheless, it is charged against the recipient and is to be deducted from the property transferred to him (R.S. 54:35-6).In re Roebling's Estate, 89 N.J. Eq. 163; 104 Atl. Rep. 295;
appeal dismissed, 91 N.J. Eq. 72; 108 Atl. Rep. 359; Turner v.Cole, 118 N.J. Eq. 497; 179 Atl. Rep. 113; Fidelity Union TrustCo. v. Hall, 125 N.J. Eq. 419; 6 Atl. Rep. 2d 124;Righter v. Fidelity Union Trust Co., 110 N.J. Eq. 169;159 Atl. Rep. 393; Morristown Trust Co. v. Childs, supra.
Vice-Chancellor Buchanan in Morristown Trust Co. v. Childs,supra, among other things, said:
"Applying the principles of these decisions to the case heresub judice — the will directs payment by the executor, out of the residuary testamentary estate, only of taxes imposed against `my estate' or against `any gift herein provided.' `My estate' means only the property passing under the will — CommercialTrust Co. v. Millard, supra — and the property comprised in the 1929 and 1937 transfers is not included *Page 531 
therein; neither is it included in any gift made by the will. Hence the will does not direct the executor to pay any tax on those inter vivos transfers; on the contrary it impliedly directs that any such tax, whether federal or state, shall not be paid out of the testamentary estate but shall be borne by theinter vivos transferees.
 * * * * * * *
"Such part of the New Jersey tax as is assessed on the basis of the property comprised in the 1929 transfer is to be paid by the trustees under that transfer, and such part as is assessed on the basis of the property conveyed in 1937 is to be paid by the trustee under the 1937 transfer — the balance is to be paid out of the testamentary residuary estate. Such part of the federal estate tax is to be borne by the 1929 trust estate as bears the same ratio to the total federal estate tax as the ratio borne by the 1929 trust assets to the total assets entering into the total tax, and similarly as to the part of that tax which is to be borne by the 1937 trust assets — the balance of course to be borne by the testamentary residuary estate."
In Fidelity Union Trust Co. v. Hall, supra, the court held that the decedent's estate was entitled to reimbursement from aninter vivos trust created by the decedent where the decedent exercised by her will a power of appointment over the corpus of the trust and the will contained no direction that any taxes be paid out of the residuary estate.
In Turner v. Cole, supra, our Court of Errors and Appeals held that the death tax is an estate tax as distinguished from an inheritance tax and payable by the estate before distribution and not by the distributees or beneficiaries.
The federal estate tax is a tax imposed upon the transfer of the "net estate" of a decedent (26 U.S.C.A., §§ 810, 935). It is calculated on the net estate and not on legacies or distributive shares; it taxes the interest of the decedent which terminated on his death, and not the property to which the beneficiary succeeded. The tax imposed is required to be paid by the executor (26 U.S.C.A., § 822), and "so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before *Page 532 
its distribution." (26 U.S.C.A., § 826 (b).) See, also, YoungMen's Christian Association v. Davis, 264 U.S. 47;44 Sup. Ct. 291; 68 L.Ed. 558; Turner v. Cole, supra.
Counsel opposing the apportionment of the estate and inheritance taxes that may be imposed with respect to the intervivos trusts, rely somewhat upon this court's decision in the case of Commercial Trust Co. v. Kohl, 131 N.J. Eq. 233;24 Atl. Rep. 2d 809. The situation in the Kohl Case was decidedly different from that involved in the instant matter. In the Kohl Case, the question of liability for federal taxes on property owned by the decedent and his wife as tenants by the entirety was involved. There is no such question here. All the circumstances in the Kohl Case indicated that the decedent intended that the payment of the federal taxes should be borne by the estate. There is no such implication to be found in the instant circumstances.
The inter vivos trusts and the provisions of the Palmer will reflect considerable thought, deliberation and study by their creators. They are separate and unrelated documents. The preparation of the instruments presumably consumed a long period of time and evidences most painstaking efforts. The trust agreements and the testamentary provisions are most precise and bear the indicia of the utmost care. I find no doubtful or defective expression of intent or purpose in the instruments. I am satisfied that had the decedent intended that his residuary estate should be chargeable with the inter vivos taxes, he would have clearly indicated it in his will.
Summarizing my views hereinabove stated, I conclude — that under the Eighth Article of the will of Edgar Palmer, the taxes therein mentioned include only taxes upon property passing by the will itself and exclude all taxes upon property forming the subject-matter of the inter vivos trusts; that the executors are entitled to reimbursement from such of the trusts as shall be held to be part of the taxable estate of Edgar Palmer for the taxes for which the executors may be held liable in the first instance because of the inclusion of such trusts; and thatExhibits 2, 3 and 4 are each valid trusts effective according to their terms. *Page 533