THE EXECUTORS OF JOSEPH W. TAYLOR, deceased,

*v.*

THE TRUSTEES OF BRYN MAWR COLLEGE et al.

1. A gift of a fund to establish and maintain a school of learning is a charitable trust.

2. This court will not administer a foreign charity, but where such a charity is valid by the laws of this state, and by the laws of the state where it is to be executed, and the trustees have the legal capacity to receive the fund and carry out the charity, this court will order its payment to them.

---

Bill for construction of will and directions.    On final hearing on pleadings.

*Mr. B. Gummere,* for complainants.

*Mr. P. L. Voorhees,* for trustees of Bryn Mawr College.

THE CHANCELLOR.

This is a suit brought by the executors of Joseph W. Taylor, deceased, late of Burlington county, for construction of the residuary clause of his will, and consequent directions as to the disposition of the residue of his estate.    The testator, by that clause, gives all the residue to eleven persons, whom he names (by the codicil he adds two more, whom he also designates), or the survivors of them, in trust, as soon as a corporation shall be established under the laws of Pennsylvania, for a college or institution of learning, having for its object the advanced education

of females, as thereinafter set forth, to be under the care and
management of the trustees or others that they may from time
to time appoint to fill vacancies in their number, and authorizes
and directs that his executors, after having paid òr made provi-
sion for all the legacies and bequests thereinbefore given and
made, convey, assign and transfer all the residue of his estate to
the corporation absolutely, without further responsibility on their
part. He then provides that the trustees of the corporation may
proceed to expend a portion of the principal in purchase of suit-
able ground, to be chosen with care by them, and the erection
thereon of substantial, sightly and suitable buildings of the most
approved construction, for the comfort, advanced education and
care of young women or girls of the higher and more refined
classes of society, and gives them directions where to locate the
site, unless it should have been obtained previously. The
trustees are to have power, from time to time, to fill vacancies in
their number (keeping it as fixed by him), the new trustees to
be members of the society of Orthodox Friends, of which he
himself was a member; and he expresses his desire that in the
selection and appointment of trustees great care shall be taken to
choose competent Friends of high moral and religious character,
possessing enlarged and enlightened and cultivated minds, as far
as practicable. He gives the trustees power to sell and convey
any or all of the real estate "devised as above," or any that
may be purchased by them, from time to time, for the trust,
without liability on the part of the purchasers for the applica-
tion of the purchase-money. He then provides that the trustees
"having charge and control of said corporation" are, after
coming into possession of the residue, to retain sufficient to pay
for the ground and needful buildings, furniture &c. &c., for the
institution, and are to invest the remainder for an endowment
fund, the income from which they are to apply to the necessary
expenses and support of the college or institution for all time to
come; and he empowers them, if it be found necessary, in their
discretion, to spend part of the principal for that purpose,
expressing his desire, however, that they infringe upon the prin-
cipal as little as possible. By the codicil, he revokes the power

Taylor v. Trustees of Bryn Mawr College.

to trench upon the principal. He gives directions to the trustees as to the character of investments to be made by them of the endowment fund, and provides that they are to have power to hold at discretion any securities that may pass into their hands from his estate. He gives directions as to the admission of students, providing that, other things being equal, preference is to be given to members of the Society of Friends, and requiring that students who may not be members of that society must conform to the customs and rules of the institution, and be willing to be educated in the same manner as students who are of that society. He adds various expressions of his wishes in regard to the mode of education ; some of a mandatory and others of a precatory character. By the codicil, he appoints, as before mentioned, two additional trustees to the eleven named in the will, and designates the thirteen as trustees of his residuary estate and of the college. He also appoints one of them, Francis T. King, president of the board. The will is dated on the 19th day of February, 1877, and the codicil on the 25th of October following. The testator died in January, 1880. Before his death he purchased the site for the buildings and began to erect them, and he was proceeding with the work when he died. The site selected was at Bryn Mawr, in Pennsylvania. The executors have filed their final account. The residuary estate is very large, about $750,000.

The persons named in the will and codicil as trustees, in May, 1880, became incorporated under the general law of Pennsylvania by the name of " The Trustees of Bryn Mawr College," and they now apply to the executors for the transfer to them of the residuary estate. All of the trustees except one reside out of this state. Of the non-residents, one resides in New York, one in Maryland, one in Rhode Island, and the rest in Pennsylvania. The executors, in view of the large amount of the residuary estate, the fact that, if the claim of the corporation be conceded, the estate will pass out of the jurisdiction of the courts of this state, the doubt which has been suggested as to whether the corporation is entitled to receive anything from them, and their unwillingness to determine for themselves, even with the aid of

counsel, whether the corporation, if entitled to receive the residue from them, is a lawful corporation, and such as was intended by the testator, come into this court for advice.

The trust under consideration is clearly a charitable one, within the statute of *43 Elizabeth, c. 4.* That act includes in its specification of charitable uses not only free schools but "schools for learning," without the qualification that the instruction therein shall be gratuitous. The law of this state does not differ from the common law of England on the subject, which has grown up in a series of decisions founded in part on that statute. *Thomson's Exrs.* v. *Norris, 5 C. E. Gr. 489.* And the trust is, therefore, a charitable one, according to our law. *Van Wagenen* v. *Baldwin, 3 Hal. Ch. 211; Mason's Exrs.* v. *Trustees &c., 12 C. E. Gr. 53; Stevens* v. *Shippen, 1 Stew. Eq. 533; De Camp* v. *Dobbins, 2 Stew. Eq. 36; S. C. on appeal, 4 Stew. Eq. 671.* And it is a charitable one according to the law of Pennsylvania. *Price* v. *Maxwell, 28 Penna. St. 23.* It was said in that case, that though the statute of *43 Elizabeth, c. 4,* is not strictly in force in that state on account of the inapplicability of its regulations as to modes of proceeding, its conservative provisions have been in force by common usage and constitutional recognition; and not only they, but the more extensive range of charitable uses which chancery supported before and beyond that statute. See, also, *Pickering* v. *Shotwell, 10 Pa. St. 23.*

Nor does the fact that the charity is a foreign one constitute a valid objection to the gift. This court will not administer a foreign charity, but it will direct money devoted to such use (provided the charity is not repugnant to our laws or policy, and is in accordance with the laws of such state) to be paid to the proper parties, leaving it to the courts of the state within which the charity is to be established to see to its due administration. *Hill on Trustees 468; Story Eq. Jur.* § *1184; Tudor's Law of Char. Trusts 259; Boyle on Char. 134; Perry on Trusts* § *741.* In *Attorney-General* v. *Sturge, 19 Beav. 597,* a testatrix who had established a school at Genoa, by her will directed that $1,000 be paid to Mr. Irvine, the consular chaplain there, for its support. Mr. Irvine being dead, the legacy was, after an inquiry,

·ordered to be carried to a separate account, and the dividends paid to the consular chaplain for the time being, he rendering periodically to the judge at chambers and to the attorney-general an account of its application. In *Attorney-General* v. *Lepine, 2 Swanst. \*181,* residuary estate was bequeathed to the ministers and church officers for the time being of a parish in Scotland, for a charitable purpose. It was directed that the estate be invested in stock in the name of the accountant-general, and the dividends paid from time to time to the minister and church officers, and an order approving a scheme reported by a master for the administration of the charity was reversed. In *Provost, Bailiff &c. of Edinburgh,* v. *Aubery, Amb. 236,* there was a bequest of annuities to the plaintiffs, to be applied to charity. Lord Hardwick, was of opinion that he could not give any directions as to the distribution of the money, inasmuch as that belonged to another jurisdiction—that is, to some of the courts in Scotland—and therefore directed that the annuities be transferred to such persons as the plaintiffs should appoint, to be applied to the trusts in the will. See, also, *Emery* v. *Hill, 1 Russ. 112; Martin* v. *Paxton,* cited therein, and *Minet* v. *Vulliamy,* in note; *Mitford* v. *Reynolds, 1 Phil. 185; Forbes* v. *Forbes. 18 Beav. 552,* and *Collyer* v. *Burnett, Taml. 79.*

Corporations are capable of being trustees for charitable purposes, and where they have perpetual succession, that qualification peculiarly fits them for such trusts as this. *Whiteford's Law of Char. 2; Tudor's Law of Char. Trusts 387.*

The existence of a foreign corporation, organized under the laws of the state where the charity is to be administered, will be recognized by this court, and the fund committed to it, if, by the law of its creation, such corporation has the requisite powers and competency in the premises. *Chamberlain* v. *Chamberlain, 43 N. Y. 437.* But it is obviously due to the proper administration of justice that this court should, before ordering the payment, be fully satisfied as to the qualifications of the corporation. In the case in hand the testator intended that the trustees whom he named should become incorporated under the laws of Pennsylvania, and that the trust should be wholly administered by means of

the corporation. The gift to the trustees was intended to support the trusts until the corporation should have been created. It is to the persons named, in trust, "as soon as a corporation shall be established" &c. Such a gift is clearly valid. *Inglis* v. *Sailors' Snug Harbor, 3 Pet. 99; Trustees Cory Universalist Society* v. *Beatty, 1 Stew. Eq. 570; Stevens* v. *Shippen, Id. 487*, and *Goodell* v. *Union Ass'n, 2 Stew. Eq. 32.* He directs his executors to convey, assign and transfer all the residue to the corporation absolutely, without further responsibility on their part, and thereafter everything is to be done by the corporation. It is not the trustees as individuals, but "the trustees of the corporation," who are empowered to expend a portion of the principal in the purchase of land and the erection of buildings, and it is the same trustees to whom the power of sale is given; and the power is full and complete, extending to all the land which may constitute part of the residue, as well as all land which they may acquire otherwise. It is the trustees "having charge and control of said corporation" who are to invest the money constituting the endowment fund and apply the income, and to them is given, by the will, power to expend a part of the principal in the payment of the necessary expenses and support of the institution. Though this power is withdrawn by the codicil, the gift of it by the will is further evidence, if any were needed, of the testator's intention that the corporation should hold and manage the *corpus* of the fund. It is to the trustees of the corporation that he gives directions as to investments, and he expressly gives them power to hold any securities that may pass into their hands from his estate, thus clearly indicating his intention that the corporation should hold the *corpus*. He did not intend that the trustees whom he named, and their successors, should constitute a distinct body from the corporation, but that they should become the corporation.

"The Trustees of Bryn Mawr College" are a perpetual corporation under the laws of Pennsylvania, established (in the very language of the will) "for a college or institution of learning, having for its object the advanced education of females," as set forth in the will, and to receive the property, real and personal,

devised and bequeathed for the purpose by the testator, together with such other estate, real and personal, as may be hereafter acquired. Its charter provides for thirteen trustees, and that no one shall be a member of the corporation who shall not be a member of the Society of Orthodox Friends. It provides, also, for the admission and education of students in conformity with the testator's wishes as expressed in the will. The affairs of the corporation are to be managed by the thirteen trustees. Francis T. King is the president. The charter provides that, as to so much of the property as shall be derived from the testator's estate, it shall be used, managed and disposed of subject to the restrictions and in accordance with the directions of the will. All the requirements for the lawful formation of the corporation appear to have been complied with, and the legally appointed judicial authority has, by order, so certified, and has decreed that the charter be and is approved, and that upon the recording thereof, and of the order (which has been done), the subscribers thereto, and their associates, shall be a corporation for the purposes, and upon the terms stated in the charter. The corporation is fully competent to receive and administer the fund according to the intentions of the testator, and it must necessarily be left to the courts of Pennsylvania to see to the proper administration of the trust.

There will, therefore, be a decree that "The Trustees of Bryn Mawr College" are entitled to receive the residue of the estate, and that the executors pay it over to them accordingly.