FIRST CAMDEN NATIONAL BANK AND TRUST COMPANY, executor, &c., complainant,

*v.*

ANNE ALBERTSON COLLINS et al., defendants.

[Decided June 1st, 1932.]

*Messrs. Boyle & Archer,* for the complainant.

*Mr. William D. Lippincott,* for the defendant Collins.

BUCHANAN, V. C.

The bill is filed by complainant, executor of John J. Albertson, deceased, for judicial interpretation of the will of decedent and instructions as to its duties thereunder. Decedent's widow (individually and as co-executor); his daughter (sole next of kin), and the attorney-general of New Jersey are the defendants: the daughter assuming the burden of active contest against the validity of the testamentary provisions, which is the issue in the suit.

That provision is the bequest of the residuary estate to the complainant as trustee of the John J. Albertson fund, created by deed of the testator a few years earlier, for the purposes of that trust. The daughter contends that the trusts provided for in that deed are invalid and that the residuary bequest is therefore likewise invalid. If her contention be sustained, it results of course that testator died intestate as to his residuary estate. The residuary estate is some $622,000; the property previously in the trust, was about $80,000. Testator made provision for his wife and daughter, but the great bulk of his estate was left to the trust.

Briefly stated, the provisions of the deed of trust are that the trustee shall invest the principal and income to accumulate as large a fund as possible during a period ending twenty-one years after the death of the last survivor of several named children, and then to turn over the entire fund to a corporation to be organized under the laws of New Jersey, which corporation is to establish and maintain a school or schools for boys, girls, young men and young women for the upbuilding of their physical, moral, intellectual and religious growth, without expense to them.

It will be observed that the gift takes the form of two estates—the first a "life estate" (for the primary purpose of accumulating and increasing the *corpus* in order that it may the better serve the purpose of the main trust), and the sec-

ond a "remainder" in perpetuity. As to each of these estates the respective donees are tenants of the bare legal estate. The beneficial interest in the "remainder" is given for educational purposes, to be enjoyed by young people generally: *i. e.,* the public is the equitable remainderman. Since the "life estate" is primarily in aid of the equitable remainder, the same public is also beneficially interested therein: it is an equitable life-tenant. (Possibly the "worthy people" securing homes through building and loan associations may also be deemed to have a beneficial interest in the "life estate;" but this needs no determination here: the issue being simply whether the gift is valid or not.)

Correlating and co-ordinating the contentions set forth in the briefs on behalf of the defendant daughter, the argument is that the trust is invalid for six reasons, to wit:

1. The gift in remainder violates the rule against perpetuities because it is not made to vest within the time required by that rule.

2. The gift in remainder is a gift in perpetuity and is not a charitable trust.

3. The gift in remainder is impossible of execution.

4. The gift in remainder is against public policy, because the scope of its intended benefaction is world-wide, and the time of its intended benefaction is one hundred years hence and is therefore too remote.

5. The "life estate" being solely in aid of the "remainder" falls with the latter.

6. The "life estate" is solely for purposes of accumulation and is against public policy.

Taking up these contentions *seriatim:*

## I.

The rule against perpetuities is that a future estate or interest is void unless it must vest, if at all, not later than twenty-one years after some life in being at the time of the creation of the estate or interest. *Gray Perp. (3d ed.) § 201; Camden Safe Deposit and Trust Co.* v. *Guerin, 87 N. J. Eq.*

72; affirmed, 89 N. J. Eq. 556; McGill v. Trust Company of New Jersey, 94 N. J. Eq. 657; affirmed, 96 N. J. Eq. 331; Fischer v. Stuart, 104 N. J. Law 78.

The deed of trust gives the *corpus* to the trustee and its successors, in trust, to invest and accumulate, during the lives of six named children and "a period of twenty-one years after the death of the survivor of them," and "upon the termination" of that trust to turn over the fund to a new trustee, a corporation to be formed for the purpose, which, upon receipt of the fund, is to acquire necessary lands, buildings, and equipment, and establish and maintain a school or schools for the educational purposes mentioned.

It is clear from this that the accumulation period or "life estate" is made not longer than, but exactly coterminous with the requirements of the rule, and the future estate in "remainder" is made to commence at the same instant as the termination of that prior estate; hence the gift does not contravene the rule, and would not even if the beneficiaries were single private individuals.

There is another paragraph of the deed which reads as follows (italics mine):

"*After* the expiration of twenty-one years from the death of the survivor of said persons, said trustees shall proceed to form the corporation, * * * and shall *then* pay over the * * * fund to said corporation."

It is upon this paragraph that the defendant daughter relies, contending that since by its terms the corporation is not to be formed until *after* the expiration of the life-plus-twenty-one-year period, and the *corpus* is to be paid over *after* the formation of the corporation, the commencement of the "remainder" is beyond the period limited by the rule.

It is deemed that this argument is without merit, for several reasons.

In the first place the other provisions of the deed of trust, as already noted, established the commencement of the remainder at an instant which does not contravene the rule. If there be conflict between those provisions and the quoted

paragraph, judicial interpretation as to the grantor's true intent and meaning becomes necessary. The word "after" is often used in the sense of "at" or "upon." If so construed in the quoted paragraph, and the word "then" be construed as referring to the same instant, *i. e.,* the termination of the life-plus-twenty-one-years, the defendants' argument obviously fails. That such is the true interpretation is clear from the whole instrument—from the provisions already referred to, and from the later statements therein—"I have provided for the determination of this trust" (*i. e.,* the preliminary accumulation trust) "in order to avoid any possible question as to its validity;" and also "the estate paid over to said foundation *at* the termination of this trust."

A cardinal rule of interpretation of written instruments is that the intent of the author of the instrument is to be gained from a consideration of the entire instrument; another is that the instrument is to be construed in accordance with the presumption that the author intended to create a valid estate, *i. e.,* in favor of validity rather than invalidity, especially where (as here), it appears that the author had the rule against perpetuities in mind (*Gray Perp. (3d ed.)* § *633*); and still another rule is that in considering the terms of a gift intended for a charitable purpose the interpretation should be in favor of the charity rather than against it. *Noice* v. *Schell, 101 N. J. Eq. 252.*

In the second place, since it is quite definitely clear that the prior estate or accumulation period is made to expire at an instant not later than the limitation period prescribed by the rule, it is thereby also clear that the details as to the formation of the new trustee and the turning over to it of the trust fund, have to do solely with the legal estate, not the equitable or beneficial estate. It is the latter only which is important (as defendant expressly concedes, while at the same time advancing the utterly inconsistent contention that an estate cannot vest in a non-existent corporation) and the latter clearly must be deemed to vest at the instant (if not indeed earlier) of the termination of the accumulation period, and hence not later than the time limited by the rule.

Whether the trustee particularly specified as the holder of the legal estate be then in existence or not, is unimportant. Equity will not permit a trust to fail for want of a trustee. *Gray Perp., supra,* § *607,* and numerous cases cited.

It is perhaps unnecessary to say that the expressed wish of testator that the accumulation be carried on for a longer period, if legally possible, is not a condition of the vesting, and in nowise controls or invalidates the gift.

In the third place it would seem probable that the vesting of the equitable estate or beneficial interest in the beneficiary, the public, is not postponed to the termination of the accumulation period, but has already taken place; that it vested, as to the *corpus* conveyed by the original deed, immediately upon the delivery of the deed, and as to the assets added by testamentary bequest, immediately upon the death of testator. It is the time of the vesting of the interest which is important, not the time of commencement of enjoyment of that interest. A present immediate conveyance of the fee vests that fee, even though, by other terms of the instrument, the remainderman's enjoyment or possession is postponed until a future time. *Gray Perp., supra,* §§ *607, 673.*

In the fourth place, where the gift is a charitable trust, the rule against perpetuities does not apply, under the law of this state. *Mills* v. *Davidson, 54 N. J. Eq. 659; MacKenzie* v. *Trustees of Presbytery of Jersey City, 67 N. J. Eq. 652; Y. M. C. A.* v. *Appleby, 97 N. J. Eq. 95; affirmed, 98 N. J. Eq. 704.*

That the present trust is for a public charity seems scarcely open to serious argument. It is a gift to a general public use, for religious and educational purposes for the benefit of an indefinite class or number of persons. *Cf. Dodd* v. *Una, 40 N. J. Eq. 672* (at *709*); *Noice* v. *Schell, supra.*

The defendant contends, and sought to prove by extrinsic evidence, that the object of the grantor-testator was the advertisement and commemoration of himself, rather than effecting a benefit to the public. The question, however, is obviously to be determined from a consideration of the purposes expressed in the instrument and the nature of the results

naturally to be effected by the provisions therein: not the secret motives which may have led to such expressions of purposes and provisions for the effectuation thereof. Evidence as to such motives is immaterial, and inadmissible; evidence *de hors* the instrument is inadmissible where no ambiguity or uncertainty exists in the instrument. The distinction is aptly illustrated in *In re Coleman, 167 Cal. 212; 138 Pac. Rep. 992,* where the gift was for the erection and maintenance of a public fountain, a public charitable *purpose,* notwithstanding the donor's expressed *motive* for the making of the gift for charitable purposes, was the commemoration of her husband. It is also illustrated by a comparison of the case *sub judice* with the facts in *Detwiller* v. *Hartman, 37 N. J. Eq. 347,* on which defendant relies. In that case testator provided for a gift in perpetuity to establish and maintain a band bearing his name, to play a funeral march and other selections, at the cemetery, on the anniversaries of testator's death and legal holidays. This was held to constitute not a public purpose: neither musical entertainment nor education for the public: only the perpetuation of testator's memory.

Defendant also contends that the instant trust is not for the benefit of an indefinite body or number of persons but to a definite body, *i. e.,* to *all* the boys and girls and young men and young women in the world; that it therefore is a private trust and not a public trust. Here, again the argument seems open to doubt as to its seriousness: all else aside, what definiteness of classification exists or is ascertainable under the designation "young?" Defendant advances the statement that all under thirty years of age are to be deemed to be included, but offers no authority for such a criterion, either within or without the deed of trust: *ex necessitate,* for no such authority can be found. And how can it be said that the gift is to particular individuals designated (under a class designation) by the grantor, when the time for the ascertainment of the specified class (young persons) is so indefinite: it might occur immediately or at any time within a hundred years or so.

630

## II.

It is true that the duration of the trust is perpetual, and would be void if for private benefit. As has already been shown, however, the present trust is a public charity and hence is not void because in perpetuity.

## III.

Defendant, as a part of her argument that the trust is impossible of execution, contends that the gift is general (for the benefit of all young persons in the world); that there is no power of selection given to any one by the deed (or will); that all young persons in the world are therefore *cestuis que trustent;* that it is not only physically impossible to furnish education to all of them, but financially impossible even though the fund should be accumulated to the $327,000,000 mentioned by testator as desirable.

It may be conceded (though it is not determined: determination of the point not being necessary) that the class of persons to be benefited by this trust includes within its scope young people not merely of this state or nation but the world over; it may also be conceded that if the present deed of trust does not impliedly give the trustee the power to make selection from amongst the young people of the entire human race, the trust is impossible of execution and must be held void, under *Norcross' Adm'rs* v. *Murphy, 44 N. J. Eq. 522.*

It is deemed, however, that the provisions of the deed do by implication give such power to the trustee.

The deed provides that upon the payment of the fund by the trustee-for-accumulation to the newly incorporated trustee, the board of managers of the latter are to provide lands, buildings and equipment and establish and maintain a school or schools for boys, girls, young men and young women for the physical, moral, intellectual and religious education of the youth of succeeding generations.

It would indeed seem that the understanding as to the donor's intention which would naturally be gathered from

that paragraph alone, by the ordinary person (unhampered by the niceties of legal refinement and unbiased by any self-interest in seeking technical reasons to attempt to avoid the donor's desire and purpose), would be that the corporate trustee which is directed, and clothed with the broad power to establish and maintain this school for young people, is also clothed with the power to determine the details of the establishment, maintenance and operation thereof.

The donor must be deemed to have been, and indeed obviously was, a man of at least ordinary intelligence. It must have been as apparent to him as to the defendant and all others of ordinary intelligence, that no such school, even with an endowment of $327,000,000 (or any other sum), could actually educate all the young people in the world. He must be deemed to have contemplated and intended that the trustee would establish principles and rules (consonant with the general spirit and purpose of his expressed intent) for the selection of the particular persons who would be the actual recipients of the education—just as he must be deemed to have intended that they would select the particular subjects for the curricula, or the particular style and size of buildings, or the particular styles and quantities of equipment.

In any event, when consideration is given to two subsequent paragraphs in the deed, to wit:

"In connection with said incorporation, the Board of Managers hereinbefore mentioned is to be empowered by the corporation to administer said fund and to expend the income therefrom in accordance with the spirit and purpose intended by me as herein set forth.

"If any of the provisions of said trust or directions to the Board of Managers are impracticable or for any sufficient reason cannot be carried into effect, then I direct said trustee or said Board of Managers, as the case may be, to make the necessary changes in the policy as here outlined to overcome the obstacles so that my wishes may be met as far as possible and practicable, that this undertaking may continue a perpetual blessing for future generations."

It seems quite clear that the donor intended the secondary trustee or board of managers to have the power which is questioned by defendant—both as to selection of beneficiaries and selection of curriculum.

Here, again, the principle enunciated in *Noice* v. *Schell, supra,* that interpretation should be in favor of the intended charitable purposes rather than against it, may appropriately be mentioned. The provisions in the instant case are essentially analogous to those in *Hesketh* v. *Murphy, 36 N. J. Eq. 304,* where the requisite power and authority was found by implication; certainly they are in nowise similar to those in *Norcross' Adm'rs* v. *Murphy, supra,* upon which defendant relies. In that case the supposed charitable bequest was utterly vague, general and indefinite: there was no mention of any administrator thereof by name or otherwise. In view of the expressions of Chief-Justice Beasley in *Hesketh* v. *Murphy, supra,* and the unanimous concurrence therein, the validity of the present trust, on this issue, seems clear.

To what extent that implied power rests within the absolute discretion of the trustee, and to what extent it is subject to control by a court having jurisdiction over the administration of the trust, to the end that the general purposes and principles of the donor shall be effectuated, is of course a question that need not here be determined, and with which defendant is in nowise concerned.

Defendant also argues, in support of the contention that the trust is impossible of execution, that the particular directions as to the incorporation and constituency of the secondary trustee are not possible of being carried out under the existing statutes of this state relative to incorporation for religious or charitable purposes. That argument is completely met (assuming that no enabling statute be enacted within the requisite period), by the power given by the donor to the primary trustee (as well as the secondary trustee or board of managers) to make changes in details, when necessary, in order to effectuate the general purposes and intent of the trust.

With the establishment of the implied powers in the trustee, the contention of impossibility of execution is left without foundation.

## IV.

This contention of defendant is essentially as follows: That a trust in perpetuity is primarily invalid; that it is

only the exceptional trust in perpetuity which is held valid, and if held valid it is only if, and because, public policy requires that an exception be made in its case; that in the instant case there are two features of the trust which exclude it from being a trust which should be favored by the public policy of this state, to wit: (a) it is world-wide in scope as to beneficiaries, and (b) it will benefit no one until one hundred years hence; therefore the trust is not one in favor of which the public policy of this state should lead the court to make an exception against the general rule that trusts in perpetuity are invalid.

Or, to put the argument briefly—ordinarily trusts in perpetuity are invalid; the burden is on complainant to show that this particular trust even though for charitable purposes, is favored by public policy: it is not so shown: hence it is invalid.

It is true that the general rule is that trusts in perpetuity are invalid, that is, that by the common law attempts to prevent or restrain the alienation of estates in perpetuity are invalid. (This is entirely a different thing from the invalidity of attempts to create future interests at too remote a time. *Gray Perp.* §§ *2, 3, 236, 268.*) But to this rule charitable trusts, as a class, are an exception. *Gray Perp.* §§ *589, 590.* Charitable trusts, at least for religious and educational purposes, are primarily good in this state. *Cf.,* the cases earlier cited herein.

This, then, being a charitable trust for religious and educational purposes, it is *prima facie* valid. The burden is upon defendant to show that there is a public policy of this state which requires that it be held invalid; to show that the instant case is an exception to the general class of charitable trusts.

It is true, as has already been considered, that the scope of benefaction of the instant trust is world-wide, and not confined to the citizens of New Jersey. No authority, however, has been cited, and this court knows of none, to give sanction to the contention that there is any public policy of this state which should render void a trust which would be

good if its scope were confined to citizens of this state, simply because its scope is world-wide.

And in the second place no authority is cited or is known for the proposition that the public policy of this state forbids a charitable trust, otherwise valid, simply because the commencement of its benefits is postponed for the enjoyment of future generations rather than the present.

It will be noted in this connection that defendant's statement that the trust will benefit no one until one hundred years hence is not true. The commencement of enjoyment is fixed at twenty-one years after the death of a person now in being; therefore while it is possible that it may not commence until approximately one hundred years hence, it is also possible that it may commence twenty-one years hence.

No public policy is cited or known which contravenes or limits the principles of the rule against perpetuities and its corollaries, which although they may have been of judicial origin in England, are, for the most part at least, a part of the common law of this state. As has already been shown, *supra,* not only does the rule against perpetuities not apply, in this state, to charitable trusts, but if it did, the trust in the instant case does not contravene that rule.

It is concluded therefore that the contention that the trust should be held invalid as against public policy, is without merit.

## V.

Since the contention that the main trust is invalid, is not sustained, the argument, that the prior trust for accumulation, being solely in aid of the main trust, falls with the latter—is left without foundation.

## VI.

Whether or not the direction for accumulation is enforceable, or should be enforced, if a trustee for the main trust should be formed or appointed and seek to get possession of the fund from the primary trustee before the expiration of the life-plus-twenty-one-year period, may be an interesting

question (*Cf., Gray Perp.* §§ *671, 679*), and may require determination hereafter. It is not a question in which the widow and next of kin have any interest, and needs no determination now. It is sufficient that the main trust is not invalid, hence the initial gift to the primary trustee, whether or not it may hereafter be held to be of a mere naked title and not maintainable against a trustee of the main trust, is not invalid.

Considerable reliance was placed by defendant on *Bascom* v. *Albertson, 34 N. Y. 584,* a case which has some points of similarity with the instant case, as well as some distinguishing features. Conceding, however, *arguendo,* that the present trust would be declared invalid by the New York courts under the law of New York, it is sufficient to say that the law in New York as to the rule against perpetuities is statutory and differs from the law in this state: as is also true of the law in New York as to charitable trusts and the doctrine of *cy pres.* In view of the decisions in our own state the cited case is shorn of any weight it might otherwise have.

Mention, perhaps, may also be made of defendant's argument that to hold that either the primary or the secondary trustee, or both, are empowered under the express or implied terms of the gift, to determine unexpressed details or to vary the donor's directions as to details (as to the incorporation of the secondary trustee, &c.), if necessary in order to carry out the main general purposes, would be to make a new will for the testator, citing *Smith* v. *Smith, 54 N. J. Eq. 1.* In that case the testator expressed in his will an intent to create, not a trust in general terms with the details left to the trustee, but a trust of special and limited characteristics, the details of which he himself intended to supply, but failed to do so in his will or any other written instrument referred to in the will, although he expressed some of them to certain persons verbally; it was held that the verbal expressions could not be received to supplement the will, and that the trust being incomplete was invalid. The difference is obvious between that and the instant case, where the testator by his will gives the gift to the trustee of an already existing trust

previously created by deed, for the purposes of that trust. The fact that by that deed of trust broad discretionary powers in the carrying out of the details of the donor's expressed general purposes were given to the trustee in nowise results that the trustee's determination of such details "makes a new will" for the testator.