Conrad Cantzen, a resident of Union City, New Jersey, departed this life on June 28th, 1945, leaving a holographic will dated August 4th, 1936, which was probated in the Hudson County Orphans Court on September 12th, 1945, by the complainant, who qualified as executor and trustee under the terms of the instrument.
The complainant seeks the aid and the instructions of this court, and for a construction of certain provisions of the will. The second paragraph of the will, disposing of decedent's residuary estate, reads:
"Second. All the rest, residue and remainder of my estate I give and bequeath to The Guaranty Trust Company of New York City having an office's at 140 Broadway Borough of Manhatten City of N Y, in trust however, for the uses and purposes and upon the terms contained in the resolution and declaration of trust creating the New York Community Trust heretofore adopted by said Board of directors of said Guaranty Trust Company and filed for record as provided by law all of which resolution and declaration incorporated herein, provided
 (2)
however, that I desire this trust fund shall bear the name `Conrad Cantzen Memorial Fund' and that the net income thereof shall be applied in such manner and form as shall be determined by the Actors Equity Association, a Voluntary Association having a President and Treasurer now located at 45 W. 47th Street N Y city, and shall be applied through said association for the purpose of supplying footwear to present and future members of said association and of the chorus Equity and to all needy actors of the theatrical profession, I leave the `Conrad Cantzen Shoe fund' for the people who cant buy shoes, even if they are not paid up members of Equity. Many times I have been on my uppers and the thinner the soles of my shoes were the less courage I had to face the manager in looking for a job. At the end of each year the income that is not used should be given to the Actors Fund of America.
"If at some future date said Actors Equity Association decide that under the then existing circumstances the charitable purposes which I have herein determined upon are no longer appropriate or practicable and/or that some other method of distribution for the purpose of supplying the needs of the Theatrical profession, then the purpose of said trust shall be such as under the then existing circumstances The Actors Equity Association and the Actors Fund of America shall determine; and should these associations and their legal successors cease to exist then it is my request that the N. York Community Trust in carrying out the purpose of this will shall confer with three *Page 146 
of the then leading association's having for their object charitable purposes in which members of the Theatrical profession are beneficiaries, and thereafter determine the uses of said income."
The defendant The New York Community Trust takes the position that the testator's expressions in part of this paragraph are precatory and not mandatory, and maintains that it can qualify and function under the provisions of the will in accordance with its resolution and declaration of trust, which in substance is that the New York Community Trust is a charitable foundation whose purpose is to encourage and promote gifts for educational, charitable and benevolent uses in accordance with a plan which:
a. Meets the changing needs for such gifts with flexibility in the power of distribution required by factors which constantly render trusts created for specific objects superfluous, and compliance with their terms unwise, impracticable or impossible.
b. Insures the administration of such trusts in a manner most effectual to accomplish their general purpose without regard to and free from any specific restriction, limitation or direction contained therein.
c. Safeguards and provides for the permanent security of the principal of such gifts.
d. Provides for the selection of the beneficiaries of such gifts when the principal purpose of the trust is found impracticable or impossible to be carried out, by an impartial committee of changing persons, chosen for their knowledge of the educational, charitable or benevolent needs of the times.
Under the terms of the resolution aforesaid the complainant, by adopting it, became a trustee of the New York Community Trust, and agreed to —
"accept any gift, grant, devise or bequest in trust for public educational, charitable or benevolent uses and purposes contained in any instrument which shall have annexed thereto a copy of this resolution and declaration and/or shall effectually identify and incorporate the same by reference and thereby conclusively assent to and adopt (1) all the provisions herein specified, or (2) all the provisions herein specified, but express a desire of the maker (a) as to the time when and the purpose for which the principal shall be distributed, and/or *Page 147 
(b) as to the purpose for which the income shall be used for a definite or indefinite period, or (3) all the provisions herein specified, but express a desire of the maker that the time when and the purposes for which the principal and/or income shall be used shall be determined solely by the members of the Distribution Committee hereinafter referred to, appointed by the Trustees."
The resolution also provided in paragraph three that —
"The estate in any property, real or personal, from time to time given, granted, devised or bequeathed to any one of the Trustees for the uses and purposes, upon the conditions and subject to the provisions herein expressed, shall be deemed to be an estate in severalty and shall be held and administered by the Trustee to which such gift, grant, devise or bequest shall be made; but * * * the Trustee shall have no power of disposition over, or to select or appoint the beneficiaries of the rents, profits and income of any such property or to allot the amount to be paid to any of them, such power of selection, appointment and allotment and the duty to exercise it being conferred and imposed upon the Distribution Committee, except as otherwise stated herein."
Exhibit "C" attached to the bill of complaint is an opinion of Mr. Ralph Hayes, a present director of the New York Community Trust, which in part reads:
"The Resolution and Declaration provides that funds may be established as part of the Community Trust for charitable uses, that a founder may express his desires concerning the specific charitable uses to be furthered and that the Distribution Committee will carry out such desires unless and until the Committee may determine that changed conditions occurring subsequent to the execution of the will have made the further continuance of a particular charitable activity unnecessary, undesirable, impracticable or impossible, in which event it shall give effect to other charitable uses than the one deemed obsolescent."
In this opinion it is further stated that the will is ambiguous in that the testator "adopts and incorporates in the will all of the terms and provisions of the Resolution and Declaration of Trust Creating The New York Community Trust and then appends some phraseology, which if construed as mandatory, would be at variance with the administrative procedure contained in the Resolution and Declaration so adopted and incorporated." *Page 148 
The expressed views of defendants Actors' Equity Association, Actors' Fund of America and Chorus Equity Association, are at variance with those of the New York Community Trust. They argue to the contrary, and say that no such ambiguity is presented by the terms of the will; that the intention of the testator is to provide for an incorporation of the terms of the said resolution and declaration into his last will and testament, conditioned however, and the provisions of the same to take effect and to become operative only upon the Actors' Equity Association and Actors' Fund of America ceasing to exist.
A further question for determination is contained in paragraphs nine and ten of the complaint, which read as follows:
"9. The said last will and testament of said Conrad Cantzen, deceased, also provides:
"`As to any matters and things wherein the powers of the trustees are not limited by any thing herein contained the trustees shall have all of the powers conferred upon trustees by the laws of the State of New York, and shall also have power to invest and reinvest in securities legal or not legal according to the best judgment of the investment experts of the Guaranty Trust Company of New York with offices at 140 Broadway and Fifth Ave. and 44th Street. I also give The Guaranty Trust Company the power to hold any of the securities which I die possessed of whether they are legal or not legal according to their best judgment.'
"10. The powers of trustees conferred by the laws of the State of New York are in some instances in conflict with those conferred upon trustees by the laws of the State of New Jersey. Complainant is in doubt as to whether it also has the powers conferred upon trustees by the laws of the State of New Jersey, and whether when there is a conflict it should proceed under the laws of the State of New Jersey or under the laws of the State of New York, and therefore requires and seeks instructions from this honorable court with respect thereto."
Both of these paragraphs are admitted in the joint answer of the three defendants, Actors' Equity Association, Actors' *Page 149 
Fund of America and Chorus Equity Association. Paragraph nine is admitted in the answer of the defendant, New York Community Trust, but that defendant declares it has no knowledge or information sufficient to form a belief as to paragraph ten.
In the circumstances, it is my opinion that the trustee shall have all of the powers conferred upon trustees by the laws of the State of New York and the State of New Jersey; and that where there is a conflict, it has the right to use its judgment and decide which law it will follow.
The complaint raises the point whether the trust of the residuary estate is a trust for a public charity. The answer of the four defendants all admit that the trust of the residuary estate is a trust for a public charity.
The Actors' Equity Association and the Actors' Fund of America by resolutions of their governing bodies declared that the charitable purpose which the testator determined upon, i.e., distribution of footwear for needy actors of the theatrical profession, is no longer appropriate or practicable; they say that the income of the fund held by the complainant as trustee, should be disposed of by direct payment by the complainant to the Actors' Fund of America to be first used by the Fund for those entitled thereto under the will of the decedent, for shoes, and the balance as annually determined to be set aside by the Fund for its general charitable purposes.
The trust established by the decedent is unquestionably a trust for a public charity, and, in the circumstances, it does not violate the rule against perpetuities, and is therefore valid under the law of our state.
The design of the rule against perpetuities is to prohibit the power of suspension of alienation by a testator. See FirstCamden National Bank and Trust Co. v. Collins, 110 N.J. Eq. 623; 160 Atl. Rep. 848, where it is declared:
"The rule against perpetuities is that a future estate or interest is void unless it must vest, if at all, not later than twenty-one years after some life in being at the time of the creation of the estate or interest. Gray Perp. (3d ed.), § 201; Camden Safe Deposit and Trust Co. v. Guerin, 87 *Page 150 N.J. Eq. 72; affirmed, 89 N.J. Eq. 556; McGill v. TrustCompany of New Jersey, 94 N.J. Eq. 657; affirmed, 96 N.J. Eq. 331; Fischer v. Stuart, 104 N.J. Law 78."
And in the same case it is also declared that:
"* * * where the gift is a charitable trust, the rule against perpetuities does not apply, under the law of this state. Mills
v. Davidson, 54 N.J. Eq. 659; MacKenzie v. Trustees ofPresbytery of Jersey City, 67 N.J. Eq. 652; Y.M.C.A. v.Appleby, 97 N.J. Eq. 95; affirmed, 98 N.J. Eq. 704."
The term "public charity" is considered in Noice v. Schnell,101 N.J. Eq. 252; 137 Atl. Rep. 582. There the court said:
"From the wealth of decisions on this subject there are some outstanding cases which contain definitions of a public charity to which reference is frequently made. The definition of a public charity given by Horace Binney in his argument before the United States Supreme Court in the Girard Will Case and adopted by the court (Vidal v. Girard, 43 U.S. 127; 11 L.Ed. 205), is one of the most striking. It is as follows:
"`Whatever is given for the love of God or for the love of your neighbor in the catholic and universal sense — given from these motives and to these ends — free from the stain or taint of every consideration that is personal, private or selfish.'
"In the able opinion in this court of the late Judge Green, inMacKenzie v. Trustees of Presbytery of Jersey City, 67 N.J. Eq. 652,
he approves the definition given by the eminent Massachusetts jurist, Justice Horace Gray, in Jackson v.Phillips et al., 96 Mass. 539, which is as follows:
"`A charity, in its legal sense, may be more fully defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint; by assisting them to establish themselves in life; or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in *Page 151 
the gift itself, if it be so described as to show that it is charitable in its nature.'
"Of the text-writers, Perry gives a comprehensive definition of a charitable trust in these words:
"`Charitable trusts include all gifts in trust for religious and educational purposes in their every-varying diversity; all gifts for the relief and comfort of the poor, the sick and the afflicted, and all gifts for the public convenience, benefit, utility or ornament, in whatever manner the donors desire to have them applied.' 2 Perry on Trusts (5th ed.) 314.
"Of the shorter definitions Lord Camden's definition in Jones
v. Williams, Amb. 651, is striking. He defines a charitable trust as: `A gift to the general public use which extends to the poor as well as to the rich.'
"Another condensed definition is that of Mr. Justice Swayne inOuld v. Washington Hospital, 95 U.S. 311, which is given in these words: `A charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of social man.'"
The foregoing decisions support the contention that the decedent established a valid charitable trust, public in its nature. See, also, Woodstown National Bank and Trust Co. v.Snelbaker, 136 N.J. Eq. 62; 40 Atl. Rep. 2d 222. The fact that the decedent provided that the trust fund be set up as a memorial to himself in nowise affects the public charity interest of the trust.
That question was considered in the case of First CamdenNational Bank and Trust Co. v. Collins, supra, and also inWoodstown National Bank and Trust Co. v. Snelbaker, supra, and the principles enunciated in those cases accord with my views.
A court in construing a will is not empowered to rewrite the instrument or attempt by its interpretation of the terms thereof to make a new will at variance with the intent of the testator. When a will is ambiguous in its terms and its language misleading and confusing, the court will intervene in *Page 152 
an effort to arrive at the intention of the testator. McGill v.Trust Company of New Jersey, 94 N.J. Eq. 657; 121 Atl. Rep. 760;McDonald v. Clermont, 107 N.J. Eq. 585; 153 Atl. Rep. 691;Garabrant v. Callaway, 113 N.J. Eq. 424; 167 Atl. Rep. 1;American National Bank of Camden v. Morgenweck, 114 N.J. Eq. 286; 168 Atl. Rep. 598; DeRaismes v. Rice, 122 N.J. Eq. 611;195 Atl. Rep. 814; March v. Norristown Penn Trust Co., 123 N.J. Eq. 282; 197 Atl. Rep. 276; In re Fisler, 131 N.J. Eq. 310;25 Atl. Rep. 2d 265; affirmed, 133 N.J. Eq. 421; 30 Atl. Rep.
2d 894; Palmer v. Palmer, 135 N.J. Eq. 516; 39 Atl. Rep.
2d 438.
In Palmer v. Palmer, supra, the court held:
"It is the duty of the court to construe a will as written. It is not within its province to hazard a conclusion through the mental processes of a guess. If the language is not ambiguous and the intention is signified by apt words and phraseology, then there is no room for judicial construction. Courts are bound to regard words in their usual and most known signification, according to their natural and reasonable meaning. Green v.Green, 134 N.J. Eq. 479; 36 Atl. Rep. 2d 217."
In Stout v. Cook, 77 N.J. Eq. 153; 75 Atl. Rep. 583, the court said:
"The paramount rule for the construction of testamentary instruments is that the court must strive to ascertain the intention of the testator as expressed by the words of the instrument. Such intention, if so ascertainable, will prevail over technical rules, and will disregard the common, ordinary meanings of words and adopt such meaning as can be deduced from the testator's intention. This has long been the settled rule in England and America, and needs no citation of authorities for its support."
In applying these rules to the instant case, a study of the second paragraph of the decedent's will leads to the ultimate conclusion that the testator intended to:
a. Establish a memorial fund, the net income of which is to be applied in a manner as determined by the Actors' Equity *Page 153 
Association for the purpose of furnishing shoes for needy actors of the theatrical profession.
b. If that purpose proves impractical then the Actors' Fund of America and Actors' Equity Association are required to determine the next best purpose of the fund.
c. In the event these associations cease to exist, then the provisions of the resolution and declaration of trust of the New York Community Trust are to become operative and said trustee is directed then to confer with three of the leading associations in existence at that time whose object is charitable purposes in which members of the theatrical profession are beneficiaries, to determine the uses of the said income.
While the will refers to and incorporates within its terms the provisions of the resolution and declaration of trust creating the New York Community Trust, it is to be noted, however, that the subsequent provisions of the paragraph indicate that it was the intention of the testator that the provisions of the said resolution and declaration were only to become effective, and the New York Community Trust would only be called upon to act in the furtherance of the purposes set forth in the trust established by the decedent upon the happening of an event, or certain definite conditions, therein expressed.
The predominant idea of the testator is to be gathered from the second paragraph of the will which is to the effect that it was his aim to insure distribution and application of the net income from his trust fund by the defendants, Actors' Equity Association and Actors' Fund of America for as long a period as these associations continue in existence.
Our cases emphasize the importance of seeking and analyzing the facts which will determine the dominant idea of the testator. InCommercial Trust Company of New Jersey v. Kohl, 131 N.J. Eq. 233; 24 Atl. Rep. 2d 809, the court said: "The well-recognized rule governing the construction of wills is that the dominant idea pervading the testament must control; and minor considerations must yield if in conflict therewith." *Page 154 
Under the terms of the resolution aforesaid, the Distribution Committee of the New York Community Trust is vested with absolute and uncontrolled discretion to direct the application of all income from funds made a part of the said trust to such charitable purposes as it may deem proper, "without regard to and free from any specific restriction, limitation or direction," which might be contained in the testator's will.
This declared position of the New York Community Trust is untenable; it defeats the very purpose for which the Cantzen Memorial Fund was established.
The testimony shows that during the period June 1st, 1945, to May 1st, 1946, the Actors' Fund of America spent $457.67 on the purchase of shoes for indigent actors, and that for the same period the income from the decedent's estate was $3,420.07. It was adduced that the Actors' Fund of America and the Actors' Equity Association by resolutions of their governing bodies, passed on January 8th, 1946, and January 22d 1946, respectively, determined that such few requests were being made for the purchase of shoes for needy actors, that the true intent of the testator's will was not being fulfilled, and that the Actors' Fund might better administer the income from the Cantzen Fund through its regular charitable channels "over and above the bequest for shoes which would always be taken care of."
The Actors' Fund of America and the Actors' Equity Association assert that their resolutions cover the purposes and the desires of the decedent in the event the primary purpose of his trust proved impracticable or impossible. I am inclined to believe that their attitude in this respect is correct, and that it fully represents the intention of the decedent.
The courts of this state uphold the principle that where there are conflicting or inconsistent expressions or clauses in a will, the last provision must prevail. Therefore, assuming that the second paragraph of decedent's will is ambiguous by reason of the incorporation by reference of the terms of the resolution and declaration of trust, followed by instructions of the testator irreconcilable with the terms of said resolution and declaration of trust, the last instruction shall prevail; *Page 155 
the subsequent words being considered to denote a subsequent intention. In conformity with that rule, I must conclude that the defendants Actors' Equity Association and Actors' Fund of America are entitled and empowered to direct payment of all the net income from the trust fund forming the basis of this suit. SeeHendershot v. Shields, 42 N.J. Eq. 317; 3 Atl. Rep. 352;Rogers v. Rogers, 49 N.J. Eq. 98; 23 Atl. Rep. 125; Johnson v.Haldane, 95 N.J. Eq. 404; 124 Atl. Rep. 63; Byrne v. Byrne,123 N.J. Eq. 6; 195 Atl. Rep. 848; Rausch v. Libby, 132 N.J. Eq. 527; 29 Atl. Rep. 2d 378.
In Byrne v. Byrne, supra, the court said:
"It is to be noted that the ninth subparagraph of paragraph fourth, disposes of the corpus. That is the last paragraph of the will. It is to be noted that the prior subparagraphs, 1 to 8, are directly repugnant to the provisions of subparagraph 9. Under these circumstances, the latter clause of the will must prevail."
The evidence indicates that the Actors' Fund of America has been actively engaged in charitable work since 1882. It has representatives in most of the leading cities of the country. The testator visited its offices frequently. He displayed a deep interest in its affairs and familiarized himself with its charitable aims and objects. It administers relief to needy actors, furnishes them medical aid and assistance, and helps in the burial of deceased indigent members of the theatrical profession. The testator, in his lifetime, by both word and deed supported its charitable work, and his testament evidences a continuation of that support.
In addition to the views hereinabove expressed and in conformity therewith the complainant is instructed that the annual payment of all of the income from the Conrad Cantzen Memorial Fund shall be made to the Actors' Fund of America.
I shall advise a decree accordingly. *Page 156