A construction of the last will and testament of William J. Sweeney, a practicing physician, who died April 22d 1945, is sought by the complainant, the executor named therein. The will is dated February 24th, 1938. It was probated May 3d 1945, before the surrogate of the County of Hudson. The complainant and the decedent's wife, Mary Catherine Sweeney, who predeceased the testator, were named executor and executrix, respectively.
The complainant seeks to be advised (a) as to what is included in the testator's expression "the contents of the house at 68 Clifton Terrace, Weehawken, New Jersey," as stated in paragraph eighth of his will, reading as follows:
"I give and bequeath to my wife MARY CATHERINE SWEENEY, if she shall survive me, the contents of the house at 68 Clifton Terrace, Weehawken, New Jersey, or if she shall not survive me, I give and bequeath the same in equal shares to SARAH L. AND CLAUDIA HAYCOCK, or to the survivor of them."
(b) Does the sum of $28,000 and the five Canadian Northern Railway Company bonds which the testator in his lifetime placed in safe deposit box No. 266 in the Hamilton National Bank, Weehawken, New Jersey, and removed therefrom by him in his lifetime, belong to Marie Elizabeth Sweeney, the testator's stepmother, which cash and bonds are referred to in testator's communication to her, reading as follows:
"Monday
Dear Marie: —
I just put $28,000 in cash in your Box 266 — also (5) Canadian No R.R. Co. Bonds. Send to Bank addressed to me an order for me to go to your box so if anything should happen to you I would have no trouble getting back my money. *Page 452 
I will keep the keys to your box in envelope in my files and if anything happens to me — you come down at once and get everything out of your box — but don't cash but hold Can. Nor. bonds coupons just to see if anything shows up and if it does just say I told you to hold them for me for safe keeping. If in a few years nothing is heard from them (U.S. Gov.) then cash them. They are worth $6,250.00.
Gus Martin knows where the keys are kept along with everything else.
We leave midnight Friday. Due in Los Angeles 8 P.M. Saturday night. Airplane is the thing and as a matter of fact I don't give a dam whether plane goes down or not.
With love
WILL.
 No word of this to Mary C or anyone else."
(c) Was there a valid gift by decedent to his stepmother, Marie Elizabeth Sweeney, of a $2,000 note and mortgage dated March 24th, 1938, covering premises located in the State of Rhode Island?
(d) Did the legacies given to friends, $2,000 to Mary Fennell, and $1,000 to Fred House, lapse because those beneficiaries predeceased testator?
(e) Is the trust established in paragraphs eleventh and twelfth of the will a valid charitable trust, or does it fail since the trustee named under the fifteenth paragraph of the will declined to accept the appointment? The paragraphs read as follows:
"Eleventh: All the rest, residue and remainder of my estate, of whatsoever nature and wheresoever situated, including all lapsed legacies, and the net proceeds of my real estate when sold, I give, devise and bequeath to my trustee hereinafter named, IN TRUST, for the following uses and purposes: To invest and reinvest and keep the same invested, pay all necessary charges and expenses in connection therewith, and pay the net income therefrom to my wife, MARY CATHERINE SWEENEY, during her lifetime, if she shall survive me by more than three calendar months, such payments to be made quarterly or half yearly, or otherwise as the income from said trust estate shall permit."
"Twelfth: If my wife shall not survive me, or shall not survive me by more than three months, or if she shall survive me by more than three months, then on her death, I direct that thecorpus of said trust fund shall be used to build, equip and maintain a library in Kilkee, County Clare, Ireland, to be known as THE SWEENEY MEMORIAL LIBRARY. The carrying out of such provision shall be under the direction of my trustee hereinafter named." *Page 453 
"Fifteenth: I nominate and appoint the UNITED STATES TRUST COMPANY OF NEW YORK sole trustee under this my Will, without bond or security."
Counsel have stipulated that in consideration of a withdrawal of claims against the estate of the decedent made by Sarah L. and Claudia Haycock, who were bequeathed the contents of the house at 68 Clifton Terrace, Weehawken, New Jersey, they, Sarah L. and Claudia Haycock, are entitled to the following things in said house: the rugs, the cash found therein including a traveler's check for $100, the $1,400 which was in a safe, the $230 which was in a filing cabinet in the testator's office, $12 found in a pocket of decedent's clothing, the articles of jewelry, and medical instruments found in decedent's office.
The stipulation also provides that the automobile found in the garage detached from the house and the contents of the garage shall not be considered as part of the contents of the house, and that the $2,000 note and mortgage of Marie E. Sweeney found in the house shall not be considered as part of the contents of the house.
In view of the stipulation it is not necessary to discuss the legality of the questions involved arising from the expression in the will — "the contents of the house at 68 Clifton Terrace, Weehawken, New Jersey."
The stepmother of testator, Marie Elizabeth Sweeney, offered no evidence showing title to the $28,000 and the five bonds which had been placed in safe deposit box No. 266, and which had been removed therefrom by the testator in his lifetime. While the box stood in the name of Marie Elizabeth Sweeney, the testimony shows that it had been opened in her name by the testator, William J. Sweeney. He obtained from the bank the signature cards and returned them to the bank signed by Marie Elizabeth Sweeney, who did not appear at the bank for the purpose of renting the box.
It is contended that the testator made a valid inter vivos
gift of the contents of that box to Marie Elizabeth Sweeney. It is argued that even though he may have rented the box in the name of his stepmother, he did so as her duly authorized agent. I am satisfied such is not the fact. The money and *Page 454 
bonds were placed in the deposit box by the decedent shortly before he proceeded to California by airplane. The moneys were withdrawn therefrom by him upon his return from his California trip. The box was closed out during his lifetime. The money and bonds were not in the box at the time of his death. They were found among his general assets.
During the time the deposit box stood in the name of Marie Elizabeth Sweeney, she never deposited anything therein or removed anything therefrom. She at no time visited the bank while the box stood in her name. The keys to the box were held by the decedent; and he appeared at all times to exercise control over it.
The testator's intent as to the contents of that box is clearly expressed in the aforesaid letter to his stepmother (ExhibitC-10). It was written on February 21st, 1938. His will is dated February 24th, 1938. He left for California by airplane on Friday, February 25th, 1938.
It will be observed that the testator in the letter requests an order on the bank from Marie Sweeney which will give him access to the box so that he "would have no trouble getting back my money." That phrase "my money" connotes ownership and wholly closes the door to any inference of a gift. In Stevenson v.Earl, 65 N.J. Eq. 721; 55 Atl. Rep. 1091, the court said: "But, in order to legalize such a gift, there must be not only a donative intention, but also, in conjunction with it, a complete stripping of the donor of all dominion or control over the thing given." That observation of the court applies here. See Peppler
v. Roffe, 122 N.J. Eq. 510; 194 Atl. Rep. 548.
I do not concur in the contention that the money in the safe deposit box was a gift causa mortis. Such a gift is made in contemplation of the donor's impending death. No such situation was present in the instant case. The testator did not anticipate approaching death. Weiss v. Fenwick, 111 N.J. Eq. 385;162 Atl. Rep. 609; Peppler v. Roffe, supra; Imparato v. Luscardi,123 N.J. Eq. 298; 197 Atl. Rep. 379; Rush v. Rush, 138 N.J. Eq. 611; 49 Atl. Rep. 2d 238.
There is no evidence to sustain the claim of a gift of the $2,000 note and mortgage affecting the Rhode Island premises. *Page 455 
They were in the decedent's possession at the time of his death. There had been no delivery or surrender of those instruments by the testator. They remained under his dominion and control up to the time of his demise. While it is alleged in the bill of complaint that the testator said, "If anything happens to me, give, at once, to my step-mother, the $2,000 note and mortgage I hold against her," there was no proof submitted to sustain that allegation. See Stevenson v. Earl, supra.
The legacy of $2,000 to Mary Fennell and the legacy of $1,000 to Fred House, both beneficiaries, being just friends of the testator who predeceased him, lapsed.
The testator in the eleventh paragraph of his will devised and bequeathed his residuary estate to his trustee in trust with instructions to pay the net income therefrom to his wife, Mary Catherine Sweeney, during her lifetime if she should survive him by more than three calendar months, and if she did not survive him, as aforesaid, then, by the provisions of the twelfth paragraph, he directed "that the corpus of said trust fund shall be used to build, equip and maintain a library in Kilkee, County Clare, Ireland, to be known as THE SWEENEY MEMORIAL LIBRARY. The carrying out of such provision shall be under the direction of my trustee hereinafter named."
As above indicated the testator's wife predeceased him.
By the fifteenth paragraph of his will he nominated the United States Trust Company of New York to act as his sole trustee. The Trust Company declined to act as trustee. In view of the declination and the fact that the testator's wife predeceased him, counsel for the Attorney-General of Eire, and of the Town of Kilkee and County Clare, urges that the testator's residuary estate be constituted into a trust fund and that his expressed intentions for a library should be fulfilled. Counsel representing several of the defendants contend in the circumstances that the trust has failed.
Counsel for the Attorney-General of Eire, c., maintains, and I believe successfully, that the trust created by the testator is a charitable trust and to permit it to fail would be a repudiation of testator's clear intent. See Guaranty Trust *Page 456 Co. v. The New York Community Trust, 139 N.J. Eq. 144;50 Atl. Rep. 2d 161; Noice v. Schnell, 101 N.J. Eq. 252;137 Atl. Rep. 582.
 2 Perry on Trusts and Trustees (7th ed.) 1176 ¶ 687, defines a charitable trust as follows:
"Charitable trusts include all gifts in trust for religious and educational purposes in their ever-varying diversity; all gifts for the relief and comfort of the poor, the sick, and the afflicted; and all gifts for the public convenience, benefit, utility, or ornament, in whatever manner the donors desire to have them applied."
In 10 Am. Jur. 632 § 66, appears the following:
"A gift for the purpose of aiding in the establishment and support of a public library is a gift for a charitable purpose. Such gifts are looked upon with peculiar favor by the courts, which take special care to enforce them, and every presumption consistent with the language will be indulged to sustain them."
The question is raised that the trust, since it is to be known as "The Sweeney Memorial Library" is not a charitable trust, and that it violates the rule against perpetuities. I am satisfied the objection is without substance. That question was raised and disposed of in Guaranty Trust Co. v. The New York CommunityTrust, supra, wherein the court said: "The fact that the decedent provided that the trust fund be set up as a memorial to himself in no wise affects the public charity interest of the trust." See, also, First Camden National Bank and Trust Co. v.Collins, 110 N.J. Eq. 623; 160 Atl. Rep. 848; Woodstown NationalBank and Trust Co. v. Snelbaker, 136 N.J. Eq. 62; 40 Atl. Rep.
2d 222.
Where the gift establishes a charitable trust the rule against perpetuities does not apply. Mills v. Davison, 54 N.J. Eq. 659; 35 Atl. Rep. 1072; MacKenzie v. Trustees of Presbytery ofJersey City, 67 N.J. Eq. 652; 61 Atl. Rep. 1027; Young Men'sChristian Association v. Appleby, 97 N.J. Eq. 95;127 Atl. Rep. 25; affirmed, 98 N.J. Eq. 704; 130 Atl. Rep. 921; GuarantyTrust Co. v. The New York Community Trust, supra.
Some of the parties hereto dispute the possibility of performance of the trust. The evidence indicates that the trust *Page 457 
is possible of performance. No evidence has been offered to the contrary.
The testator left a gross estate of $434,214.56. The accounting approved by the Hudson County Orphans Court shows a net balance on hand of $297,308.99. The reasonable cost of erecting a library building adequate for the needs of a community of the size of the Town of Kilkee would be between $20,000 and $25,000. Starting with five thousand volumes, the cost would be approximately $12,500. A librarian's salary would amount to approximately $1,000 a year. The cost of cleaning the building would amount to approximately thirty shillings a week. With a building cost of about $20,000, a library cost of $12,500, there would be a sum in excess of $200,000 remaining with which to maintain the library. With that sum properly invested under the court's direction, the income, in my opinion, would sustain the annual maintenance cost and insure the continuance of the library for an indefinite period of time.
The details of the library could be worked out by the substituted trustee appointed by the court; and approval of the final form would be supervised by the court.
In In re Young Women's Christian Association, 96 N.J. Eq. 568;126 Atl. Rep. 610, Vice-Chancellor Fielder stated that — "When a gift for charitable uses can no longer be administered in exact accordance with the intention of the donor, this court has power, under its general equity jurisdiction, to direct that the gift be administered cy pres — that is, as nearly as possible in conformity with the intention of the donor."
The New York Court of Appeals in Re MacDowell, 217 N.Y. 454,
adopted this same rule, when it said:
"The inadequacy of the trust fund cannot in any way affect the validity of the trust. (Gilman v. Hamilton, 16 Ill. 225;Morgan v. Grand Prairie Seminary, 70 Ill. App. 575; affd.,171 Ill. 444). It is suggested by the respondent that the attempt of the testatrix to create such a trust and the contemplation of so ambitious a project with so inadequate a fund was itself such an act of folly as should incline the court to resolve all doubts as to the construction of the *Page 458 
will against its validity. Whether the purpose of the testatrix was wise or unwise is no concern of the court. The concern of the court is to determine whether the trust attempted to be created is valid or invalid and if it is susceptible of two interpretations, one of which renders it invalid and one of which renders it valid, the court must, under well-settled rules, give to it that interpretation which will uphold its validity. The trust created by the testatrix is a valid charitable trust. If circumstances render it impracticable to carry out the trust in the precise manner contemplated by the testatrix, the courts will so apply it as to accomplish the general charitable purpose which it was the design of the testatrix to carry out."
The fact that the library is to be built in Kilkee, County Clare, Ireland, does not affect the validity of the trust. That point in some respects was considered in Taylor v. Trustees ofBryn Mawr College, 34 N.J. Eq. 101, where the court in upholding as a valid charitable trust a gift of the residuary estate of a New Jersey decedent for a college in Pennsylvania, said:
"Nor does the fact that the charity is a foreign one constitute a valid objection to the gift. This court will not administer a foreign charity, but it will direct money devoted to such use (provided that charity is not repugnant to our laws or policy, and is in accordance with the laws of such state) to be paid to the proper parties, leaving it to the courts of the state within which the charity is to be established to see to its due administration. Hill on Trustees, 468; Story Eq. Jur., § 1184;Tudor's Law of Char. Trusts 259; Boyle on Char. 134; Perry onTrusts, § 741."
The chief objection raised to the validity and enforceability of the charitable trust created by the testator is that the trust should fail because the trustee named by the testator had declined to act. It hardly seems necessary to call attention to the well settled doctrine that as a general rule a trust never fails for want of a trustee, and if the person named in the instrument as trustee refuses to act the courts will appoint a substituted trustee in his place. Case v. Hasse, 83 N.J. Eq. 170; 93 Atl. Rep. 728. In Rayhol Co. v. Holland, 148 *Page 459 Atl. Rep. 358, the court among other things said: "a trust never fails for the want of a trustee, but the courts will appoint some one to act if the person named in the instrument refuses."
Vice-Chancellor Stevens in Nichols v. Newark Hospital,71 N.J. Eq. 130; 63 Atl. Rep. 621, said: "But nothing is better settled than the law does not permit a charitable trust, capable of execution, to remain unexecuted for want of a competent trustee * * *."
It is only in cases where the testator indicates that he wants the trust to fail if the particular trustee named by him refuses to act, that the court will not appoint a substituted trustee. The last will and testament of the testator in the instant case evidences no such intention. His will discloses no provision that he reposed any special confidence in the named trustee any more than the usual confidence that is reposed in any designated trustee. In fact the designation of a corporation as trustee would tend to negate that special confidence which would indicate that, unless the named trustee acted, the trust must fail. It is basically a matter of the testator's intention to be gathered from a reading of his last will and testament as was stated inPalmer v. Palmer, 135 N.J. Eq. 516; 39 Atl. Rep. 2d438. In that case the court said, in part: "It is the duty of the court to construe a will as written. It is not within its province to hazard a conclusion through the mental processes of a guess."
The testamentary trust providing for "The Sweeney Memorial Library" in Ireland is a valid charitable trust, and in view of the declination of the named trustee to act, this court will appoint a substituted trustee.
I shall advise a decree in accordance with the above views. *Page 460